(No. 11646.—Judgment affirmed.)

THE CHICAGO CLEANING COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL BOARD OF ILLINOIS *et al.*—(JULIA HOLMES, Defendant in Error.)

*Opinion filed February 20, 1918—Rehearing denied April 3, 1918.*

1. WORKMEN'S COMPENSATION—*when relation of employer and employee exists at time of injury.* Where an employee of a window cleaning company, after reporting that he was not feeling well and being told not to work until he is able, quits work for one day but goes back the next day to work on the windows of a building assigned to him by the superintendent of the company by placing an assignment slip with his tools, as was the custom, and while at work is killed by a fall from the building, the accident must be held to have occurred in the course of the employment.

2. SAME—*the Workmen's Compensation act should be liberally construed.* The Workmen's Compensation act should be liberally construed in order to give effect to the purpose and object of its adoption.

3. SAME—*business of washing windows of buildings in a large city is a hazardous occupation.* The business of washing windows, carried on by a window cleaning company in a large city, is a hazardous occupation intended to be included in the enumeration in the Workmen's Compensation act of such occupations as relate to the maintenance of buildings.

283 — 12

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. OSCAR M. TORRISON, Judge, presiding.

ZIMMERMAN, GARRETT & RUNDALL, for plaintiff in error.

CHARLES A. SCOTT, for defendant in error.

Mr. JUSTICE CRAIG delivered the opinion of the court:

Julia Holmes, in her own right and as the mother and next friend of Holger and Bernice Holmes, minor children of Haaken Holmes, deceased, filed her petition with the Industrial Board of this State for an allowance of compensation for accidental injuries which resulted in the death of Holmes while in the employ of plaintiff in error, the Chicago Cleaning Company, while washing windows at the plant of the Goes Lithograph Company, in the city of Chicago. The accident occurred on August 4, 1916, and the deceased died two days later. The Industrial Board found the parties were operating under and subject to the provisions of the Workmen's Compensation act; that the accident arose out of and in the course of the deceased's employment with plaintiff in error; that his average weekly wages were $17.40, and allowed compensation at the rate of $8.70 per week for a period of 402 weeks. On *certiorari* to the circuit court of Cook county the finding of the Industrial Board was affirmed. On motion of plaintiff in error a certificate that the cause was one proper to be reviewed by this court was granted, and the present writ of error has been sued out pursuant to such certificate.

The deceased, Haaken Holmes, had been employed by plaintiff in error as a window washer in the city of Chicago. For some time prior to the accident he had been suffering from the disease commonly known as pernicious anæmia, which usually results fatally in from two to twelve years.

Patients afflicted with this malady are expected to keep quiet at all times, and the deceased had been advised by his doctor not to work and had not worked for some time until a few days before the accident. About two or three weeks before the accident he had received an inquiry from the company as to whether he could return to work, and he reported and worked up to the day before the accident. On Monday and Tuesday, August 1 and 2, he worked as usual. On the following day he was not feeling well and did not work, and according to George Minnis, the superintendent, was told to lay off,—"that they did not want him to do any work until he was able to work." On the following morning, August 4, the deceased returned to the office of the plaintiff in error, took his tools and went to work at the plant of the Goes Lithograph Company, at Sixty-first and State streets, in the city of Chicago. Later in the day his body was found on the sidewalk in front of the building, with a leg and arm broken and the skull fractured. No one saw him at his work or saw him fall. One witness, however, testified that his body fell from somewhere above her while she was walking along the sidewalk in front of the building. The usual safety appliances used by employees engaged in this work were found attached to the side of a window on the third story of the building, and a slip of paper to be signed by the party for whom work was done, stating that it had been done in a satisfactory manner and by what employee, was found in his pocket at the time his body was picked up in front of the building. These slips were used for assignment of work, and it was customary for the employee, when he had completed the work, to have the slip signed by the customer and return it to plaintiff in error, where it was used as a basis for computing the employee's pay. Each employee was assigned a locker at the plant, in which the rope, belt and washing appliances used by such employee in washing windows were kept, and the custom was, before an em-

ployee started to work, for the superintendent to put a slip in the locker directing such employee where to go and the work that was to be done.

It is insisted that the accident in which the deceased was killed did not arise out of and in the course of the employment, for the reason that the relation of employer and employee had ceased on the day before the accident, when he was directed not to go to work again until he was able to work. Plaintiff in error insists the effect of this conversation was to terminate the employment. It is contended on behalf of the claimant that such testimony is incompetent, but, without passing on that question, we are unable to agree with the contention of plaintiff in error. Holmes was not absolutely discharged from his employment. The evidence also shows that he was not paid his wages for the two previous days' work, and that he had in his possession at the time of his death an assignment slip, directing him to go to work on the building where he was injured. The placing of such slip in the locker of the deceased was a direction from plaintiff in error to go to work the same as if delivered by its foreman in person, and when the deceased took his tools in the regular way and started to work in accordance with such assignment slip the relation of master and servant was established, and the injury occurring to the deceased while attempting to execute such assignment must be held to have occurred in the course of such employment. We think the evidence also shows that the injury arose out of the employment.

It is further insisted that plaintiff in error was not under the act, for the reason that the business in which it is engaged,—*i. e.,* cleaning and washing windows,—is not included in the provisions of the Workmen's Compensation act. While such employment is not specifically enumerated as one of the hazardous employments included under such act, it is nevertheless an employment which is extra-hazard-

ous and which we think it was the intention of the legislature should come under that act. The act is commendable legislation and should be liberally construed in order to give effect to the purpose and object in adopting such act. The legislature has not attempted to enumerate all of the various classes of work which shall be held to come under the act, but has attempted, by a general statement of the various kinds of businesses in which employers are engaged, to include all of the hazards incident to the employment of those engaged in any of such businesses. Among the businesses included are the building, maintaining, removing, repairing or demolishing of any structure. The business of washing windows, as such, in large cities, is as much a part of the maintenance of buildings as would be the replacing of glass in windows, the painting and decorating of the buildings, or the re-pointing of the outside where the mortar between the bricks was giving way. No one can seriously question but that those engaged in any of such businesses and employments would come under the act. We think the same may be said as to the business of plaintiff in error. The occupation of the deceased at the time he fell, and at other times,—that of washing windows on the outside of buildings several stories high, supported by a belt and ropes attached to the window frame,—was, in fact, dangerous.

As we are of the opinion that there is sufficient competent evidence in the record that warranted the Industrial Board in finding that the accident arose out of and in the course of the deceased's employment, the finding of the Industrial Board and the judgment of the circuit court of Cook county will be affirmed.      *Judgment affirmed.*