(No. 21830.—

ROSE RAYMOND, Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(THE ARMSTRONG PAINT AND VARNISH COMPANY, Plaintiff in Error.)

*Opinion filed December 22, 1933—Rehearing denied Feb. 8, 1934.*

DEYOUNG, J., dissenting.

JOHN A. BLOOMINGSTON, for plaintiff in error.

GEORGE C. BLISS, for defendant in error.

Mr. JUSTICE SHAW delivered the opinion of the court:

This is a writ of error to the superior court of Cook county to review an order of that court which reversed a previous decision and order of the Industrial Commission of Illinois. The Industrial Commission found all facts necessary for an award but refused it on the ground that notice of the alleged disablement was not given within the time and in the manner required by section 24 of the Workmen's Compensation act. The superior court on *certiorari* reversed this order, finding that the respondent, the Armstrong Paint and Varnish Company, had such notice. The order of the superior court allowed recovery of compensation and of necessary first aid, medical, surgical and hospital services.

There is no dispute as to facts, the only questions before the court being as to whether the notice required by the Workmen's Compensation act was given to the employer, and as to whether medical services and expenses are to be borne by the employer if an award is to be made.

For about eight years prior to Thanksgiving day of 1930, Frank H. Raymond, who was the original petitioner below and who was sixty-one years of age, had been steadily employed in the print shop operated by the Armstrong Paint and Varnish Company. In the course of that employment he regularly handled metal plates containing lead, antimony and zinc, which metals were in a soft condition and from time to time his hands became dirty with these substances. On November 26, 1930, he was

obliged to give up his work entirely and never returned to it afterwards. He was then suffering with dizzy spells, abdominal pains, belching, and other symptoms which appear to apply not only to lead poisoning but also to cases of acute gall-bladder disturbance. The record also shows that three or four years prior to 1930 he had some symptoms of lead poisoning, including pain in his joints and a characteristic "wrist drop," and that a doctor had placed his wrists in casts temporarily, to immobilize them. During the time in question, Dr. S. W. Raymond, a son of the petitioner, was furnishing all industrial medical services required by the Armstrong Company under a written contract with the General Accident, Fire and Life Assurance Corporation and was receiving as compensation a certain percentage of the premiums received by that company on that risk. This son, acting as physician for the Armstrong Company, at all times had full knowledge of his father's condition, and testified that at the time his father was obliged to quit work it was witness' opinion that the cause of his illness was chronic lead poisoning. He did not, however, report this to the company. It is clear from the record that if the doctor actually did have this opinion it was not of a clear-cut and well-defined sort, because in December he secured the assistance of Dr. Nortell, and these two doctors (the son of the petitioner below and Dr. Nortell) took the petitioner to a hospital and operated on him for gall stones and the drainage or removal of the gall bladder. This operation was performed on a mistaken diagnosis, according to the testimony of both doctors, as during the operation, when an inspection of the liver became possible, they were able to make a definite and positive diagnosis of lead poisoning instead of gall-bladder infection. This surgical procedure was in January of 1931, more than thirty days after the commencement of the alleged disability. It is clear from the record that the time of actually opening the abdomen of the peti-

tioner was the first moment when anyone was certain and positive that he was suffering from lead poisoning, and this was on January 7, 1931. It is equally certain from the record that at the time the petitioner quit work, and at all times thereafter, the employer knew as much about his illness as he did himself. It clearly appears that the son, Dr. Raymond, was in constant touch with the situation; that the foreman of the press-room or superintendent of that department at the factory had oral notice of the disablement and knew the physical condition of the petitioner, and knew that he was, in his own words, "a very sick man." The secretary to the general manager of the company had called at the home of the petitioner to deliver some pay checks about a week after his disablement. While there she visited with him and had oral notice of his disablement. She also talked with his son, the physician, and was fully informed by him as to the physical condition of his father. None of them, however, knew definitely that the cause of the petitioner's illness was lead poisoning until the date of the operation above mentioned. It is conceded that no definite specific notice that the petitioner was 'ill from lead poisoning was given to the employer within the statutory time.

The Occupational Disease act as amended in 1923 provides, in substance, that disability caused by an occupational disease arising out of and in the course of the employment shall be compensable in the same manner and subject to the same terms, conditions, etc., as accidental injuries. It is provided therein that "disablement" means the act of becoming disabled from earning full wages at the work in which the employee was last employed, and paragraph 3 of section 15 provides that "notice of the disablement shall be given to the employer, and claim for compensation shall be made, in the same manner and within the same periods of time, respectively, as are now or may hereafter be provided in the Workmen's Compensation

act concerning accidental injuries sustained by employees arising out of and in the course of their employment." (Cahill's Stat. 1933, p. 1377.) The act further provides for the same proceedings and for the same compensation as provided in the Compensation act.

Section 24 of the Compensation act, in connection with the matter of notice, provides as follows: "No proceedings for compensation under this act shall be maintained unless notice of the accident has been given to the employer as soon as practicable, but not later than thirty days after the accident. * * * No defect or inaccuracy of such notice shall be a bar to the maintenance of proceedings of arbitration or otherwise by the employee unless the employer proves that he is unduly prejudiced in such proceeding by such defect or inaccuracy. Notice of the accident shall give the approximate date and place of the accident, if known, and it may be given orally or in writing." Cahill's Stat. 1933, p. 1391.

Upon an examination of the record in this case certain facts must be noted: (1) Within about a week after the disablement the employer had oral notice that the petitioner was disabled; (2) the employer knew as much about the nature of the illness as the petitioner knew; (3) neither one of them knew the petitioner was suffering from an occupational disease; (4) neither one of them can be blamed for a failure to know, unless it might be said that the company physician should have been able to diagnose the illness correctly, although this is entirely excusable, as the record shows that several other reputable physicians and surgeons agreed in a mistaken diagnosis and performed a surgical operation based thereon; (5) the giving of any number of further notices of the facts, so far as known to the petitioner, would not have enlightened the employer at all; and (6) it is not shown that any "defect or inaccuracy of notice" has prejudiced the employer's rights in this proceeding in any way.

It is to be noted that the wording of section 24 of the Compensation act is such that it places the burden on the employer of proving not only that he is prejudiced by a defect of notice but that he has been "unduly" prejudiced.

It is first argued by plaintiff in error that prior to the amendment of 1921 section 24 of the Compensation act contained a provision that knowledge of the facts and circumstances of an accident within thirty days was sufficient, even though the employer was not given notice thereof. This provision was removed from section 24 by the amendment of 1921, and it is argued from this that it was the intention of the legislature, under the amendment, to provide that thereafter knowledge of the facts and circumstances would no longer be sufficient and that the employee would be required to give notice of the accident in strict accordance with the statute, regardless of any amount of knowledge on the part of the employer. This argument is advanced, as this case was tried, upon an erroneous theory as to the requirements of the act in regard to occupational diseases in the matter of notice. The various objections to questions, the statements of counsel, the evidence introduced and the arguments presented to this court all disclose a contention that it was necessary that the employer should receive not only a "notice of the disablement," as specified in the act, within thirty days of its occurrence, but also notice that the disablement was claimed to be due to lead poisoning.

The Compensation act is remedial in its nature and has always been liberally construed by this court for the purpose of effecting the intended benefits to the employee and of placing upon the industries affected thereby the burdens incident to such employment. (*Chicago Cleaning Co. v. Industrial Board,* 283 Ill. 177.) It cannot have been the intention of the legislature in this kind of an act to require the impossible. It was manifestly impossible for the employee in this case to tell the employer anything

about the disablement which the employee himself did not know. The last sentence of section 24 of the act clearly indicates that this is the intended construction. Its provision is, "notice of the accident shall give the approximate date and place of the accident, *if known,* and it may be given orally or in writing." An accidental injury is a thing which happens suddenly and occupies a definite point in time. An occupational disease, on the other hand, is generally a gradual, insidious and progressive injury which eventually produces a disability. In cases like the one at bar it is only when the employee is forced to discontinue his employment that there exists a point in time from which it would be possible. to begin the tolling of a period of limitation. (*Madison* v. *Wedron Silica Co.* 352 Ill. 60.) At this time, or within thirty days thereafter, the notice required by the statute must be given of the facts if known. What shall be done if the facts are not known is not stated in the act, but bearing in mind the basic difference between a disease and an accident and the remedial nature of the act, we cannot so construe it as to require the impossible and defeat its very purpose. In making a provision for notice, in case of an occupational disease, by general reference to another act instead of specifically defining and providing for the notice to be given, it must have been the legislative intent that section 24 should control and govern so far as applicable and no further. This construction finds support in the liberal provisions of that section to the effect that no defect or inaccuracy of notice shall defeat a claim for compensation unless the employer assumes the burden of affirmatively proving that he has not only been prejudiced, but unduly prejudiced, by such defect or inaccuracy. It is thus apparent that the central intent of the legislature was that such latitude and liberality in the matter of notice might be indulged as would be consistent with due protection of the employer against unjust concealment of claims. In this case there is no ele-

ment of unjust concealment and no prejudice to the employer resulting from any defect or inaccuracy of notice. It appears from the testimony of the witnesses for the respondent that within one week after the petitioner was compelled to quit work at least two oral notices were given that petitioner was disabled and a very sick man. There was nothing inaccurate about this notice, and while it may have been defective in not stating the then unknown fact that petitioner was suffering from lead poisoning, it is not shown that the employer was prejudiced in any way by this defect. Under the facts of this particular case the oral notice was sufficient.

Complaint is made of the allowance of medical, surgical and hospital bills. Section 8 of the Compensation act provides:

"Sec. 8. The amount of compensation which shall be paid to the employee for an injury not resulting in death shall be:

"(a) The employer shall provide the necessary first aid, medical and surgical services, and all necessary medical, surgical and hospital services thereafter, limited, however, to that which is reasonably required to cure or relieve from the effects of the injury. The employee may elect to secure his own physician, surgeon, and hospital services at his own expense." Cahill's Stat. 1933, p. 1381.

Sub-sections b, c, d, e, f, g, h, i, j and k provide for specific amounts for specific injuries and disabilities and other matters not here material.

The material point here is to observe that medical, surgical and hospital expenses are a part of and included with other items of compensation. They are not things apart, to be determined by other sections of the act, but incidental to the injury to the same extent and in the same manner as the specific sums of money to be paid to the employee. If the employee is entitled to compensation under section 8 he is entitled to medical, surgical and hos-

pital services at the employer's expense. The only exception is in case the employee may "elect" to provide his own.

Plaintiff in error quotes from our opinion in *Chicago-Sandoval Coal Co.* v. *Industrial Com.* 294 Ill. 351, as follows: "The applicant should show knowledge on the part of the employer of facts from which he might reasonably be presumed to know or believe that such services were necessary, or the applicant should show a request therefor on his part." We approve of and adhere to the rule which we announced in the above case but cannot arrive at the same deductions from it in the present case as are suggested by plaintiff in error. In the first place, as pointed out above, the employer knew as much about the nature of the employee's illness as the latter himself knew. All the facts were known equally by both parties, and it is difficult to perceive any just theory upon which the employee would be bound to draw the correct medical inferences from those facts and the employer be excused therefrom. Medical services are as much a part of the compensation provided by law as is the weekly payment of money, and we would not care to adopt a rule which would require an employee unskilled in medicine to make a correct diagnosis of his illness on peril of losing a large portion of that which is justly due him. We must give some meaning and weight to the word "elect," which means to choose, and until the employee has had the opportunity to choose, either to accept the services provided by his employer or to furnish his own, there has been no election.

Finding no error in the record, the judgment of the superior court of Cook county is affirmed.

*Judgment affirmed.*

Mr. JUSTICE DeYOUNG, dissenting.