# GENERAL OPINION, IN RE: UNIVERSITY OF ILLINOIS

*Opinion submitted March 14, 1935.*

758

[redacted]

*Per Curiam:*

In compliance with the request of Hon. Sveinbjorn Johnson, Counsel for the University of Illinois, for an informal opinion by this court as to the right of various employees at the University of Illinois to an award for medical or/and hospital attention furnished such employees, by virtue of any liability under the Illinois "Workmen's Compensation Act", the court renders its opinion in the several matters, as follows:

In determining whether the respective claims should be allowed we are mindful of the fact that such claims are not awards in the usual sense in which awards by this court are made and are not payable by appropriation in due course, but that such opinions are for the guidance of the University authorities, and that such claims, if paid, will be paid by the University authorities from funds at the disposal of the University.

Cases of the character here involved are not without their difficulties, and in these particular cases, decisions are made more difficult by reason of the very meager statement of facts submitted to us. In some of the cases submitted, it is necessary to supplement the given facts with the personal knowledge of the court as to the activities of the University and the several departments thereof in order to arrive at a conclusion. Ordinarily this would not be permissible, but inasmuch as this opinion is merely for the guidance of the University authorities, and does not constitute an award, we feel that such action is justified.

—

Although the several statements of facts do not so allege, we are advised that the University is an Illinois corporation, incorporated under a special charter in 1867, under the name of Illinois Industrial University;—the name being changed to University of Illinois in 1885. The several statements contain no information as to the charter powers of the corporation, but the case of *North* vs. *Board of Education,* 201 Ill. App. 449, hereinafter referred to, states that the Uni-

versity was chartered "to furnish instruction to students in various branches of learning." Considering the several statements of fact as a whole, it appears that the University consists of a number of schools or departments which are practically complete in themselves.

—

Before setting forth the conclusions at which we have arrived, we will refer briefly to the principles of law involved, as set forth in the statutes and the decisions of the courts.

—

With reference to the manner in which the Workmen's Compensation Act should be construed, the Supreme Court, in the case of *Chicago Cleaning Co.* vs. *Ind. Board, 283 Ill. 177-181,* said:

"The Act is commendable legislation and should be liberally construed in order to give effect to the purpose and object in adopting such Act."

In the case of *Newman* vs. *Ind. Com., 353 Ill. 190-193,* the court said:

"The Workmen's Compensation Act is a humane law, of remedial nature, and wherever construction is permissible, its language should be liberally construed.

In the very recent case of *Raymond* vs. *Ind. Com., 354 Ill. 586-591,* the court approved the decisions in the Chicago Cleaning Co. case, and said:

"The Compensation Act is remedial in its nature and has always been liberally construed by this court for the purpose of effecting the intended benefits to the employee and of palcing upon the industries affected thereby the burdens incident to such employment."

—

Section Three (3) of the Workmen's Compensation Act provides:

"The provisions of this Act hereinafter following, shall apply automatically and without election * * * to all employers and all their employees engaged in any department of the following enterprises or businesses which are hereby declared to be extra-hazardous, to-wit:

1. The erection, maintaining, removing, remodeling, altering or demolishing of any structure, except as provided in sub-paragraph 8 of this section.

2. Construction, excavating or electrical work, except as provided in sub-paragraph 8 of this section.

3. Carriage by land, water or aerial service and loading or unloading in connection therewith, including the distribution of any commodity by horse-drawn or motor driven vehicle where the employer employs more than two employees in the enterprise or business, except as provided in sub-paragraph 8 of this section.

4. The operation of any warehouse or general or terminal storehouses.

5. Mining, surface mining or quarrying.

6. Any enterprise in which explosive materials are manufactured, handled or used in dangerous quantities.

7. In any enterprise wherein molten metal, or explosive or injurious gases or vapors, or inflammable vapors or fluids, or corrosive acids are manufactured, used, generated, stored or conveyed in dangerous quantities.

7½. Any enterprise in which sharp edged cutting tools, grinders or implements are used, including all enterprises which buy, sell or handle junk and salvage, demolish or reconstruct machinery, except as provided in sub-paragraph 8 of this section.

8. In any enterprise in which statutory or municipal ordinance regulations are now or shall hereafter be imposed for the regulating, guarding, use or the placing of machinery or appliances or for the protection and safeguarding of the employees or the public therein; each of which occupations, enterprises or businesses are hereby declared to be extra-hazardous: *Provided*, nothing contained herein shall be construed to apply to any work, employment or operations done, had or conducted by farmers and others engaged in farming, tillage of the soil, or stock raising, or to those who rent, demise or lease land for any such purposes, or to anyone in their employ or to any work done on a farm or country place, no matter what kind of work or service is being done or rendered.

9. Any enterprise, business or work in connection with the laying out or improvement of subdivisions of tracts of land.

10. Any enterprise for the treatment of cross-ties, switch-ties, telegraph poles, timber or other wood with creosote or other preservatives. (Amended by Act approved June 10, 1929.)

—

Section Four (4) of the Act defines how the term "employer" shall be construed, and inasmuch as it covers every "public or private corporation", the University is clearly an employer within the meaning of the Act.

—

Section Five (5) defines how the term "employee" shall be construed, and under the second paragraph of said section, the several claimants in question are clearly employees within the meaning of the Act.

The University being an employer, and the several claimants being employees within the meaning of the Compensation Act, the question then arises as to whether the University at the time of the several accidents in question was engaged in any of the enterprises or businesses declared to be extra-hazardous, by such Act.

—

The question as to what constitutes an enterprise or business has frequently been considered by the Supreme Court. One of the earlier and leading cases upon the question is the case of *Uphoff* vs. *Ind. Com., 271 Ill. 312,* which arose under the Act of 1913. In that case the employer was a farmer who constructed a broom-corn shed and the claimant was injured while employed in that work. The court held that the building of such a structure did not constitute an enterprise or business within the meaning of Section Three (3) of the Act, and said:

"An enterprise is an undertaking of hazard; an arduous attempt. Lexicographers define an enterprise as 'an undertaking; something projected and attempted; an attempt or project, particularly an undertaking of some importance or one requiring boldness, energy or perseverance; an arduous or hazardous attempt, as, a warlike enterprise'. The building of this shed might be classed under the head of something projected or attempted, but hardly as an important undertaking requiring courage or energy or one that was arduous or hazardous."

In *Walsh* vs. *Ind. Com., 345 Ill. 366-369,* the Supreme Court said:

"The term 'business' in common parlance, means an employment which occupies a substantial portion of the time and attention of the one engaged in it."

We appreciate that the Appellate Court in the case of *North* vs. *Board of Trustees, 204 Ill. App. 447,* held that the University is not an "enterprise or business" within the meaning of those words as used in the Compensation Act. However, the Supreme Court, in the case of *Board of Education* vs. *Ind. Com., 301 Ill. 611,* held that a high school with a manual training department connected therewith was an enterprise within the meaning of the Compensation Act. In that case it was contended that a high school could not be regarded as an enterprise within the meaning of the Work-

men's Compensation Act, but the Supreme Court there held to the contrary and brought the case within the rule laid down in the Uphoff case, in the following language:

"The business in which the High School District was engaged was the conducting of a high school, including, among others, a manual training department. It is not unreasonable to regard such an enterprise as a work of some importance, which might even be regarded as arduous."

Surely, if a high school with a manual training department connected therewith is an "enterprise", a State University, as well as the several schools and departments included therein, must also be considered as "enterprises".

Mr. Angerstein, in his work "THE EMPLOYER AND THE WORKMEN'S COMPENSATION ACT", 1930 edition, (hereinafter referred to as "Angerstein") on page 33 sums up the rule as to what constitutes an enterprise or business, in the following language:

"It therefore seems clear that in order to constitute engaging in an enterprise or business within the provisions of Section 3 of the Act so that one engaging therein may be said to be within the provisions of the Act, the work being done must in fact be a business or enterprise, as such, an undertaking as a business for profit and not something merely incidental, occasional or merely temporary. Building a broom-corn shed by a farmer as a mere incident of farming was not within Section 3 but obviously if one engaged in the business of erecting such sheds generally for others for profit, it would be a business or enterprise. One having a private residence built or repaired would not be engaged in a business or enterprise, although one engaged in constructing homes for others would be in that business or enterprise. So also, if one was having a business building or apartment building constructed or repaired, and it was intended to rent it out or a part was rented for profit, the owner would be engaged in a business or enterprise. So also the owner of a factory or building used exclusively for his own purposes, would not be engaged in the business or enterprise of erection, maintaining, etc., of a structure."

From a consideration of these and other authorities bearing upon the question, it appears that the University is engaged in an enterprise within the meaning of the Workmen's Compensation Act;—that is to say, it is engaged through its various schools and departments, in the business or enterprise of furnishing instruction to students in various branches of learning.

———

Attention is directed to the fact that the provisions of the *present* Workmen's Compensation Act, embrace *all* em-

ployees engaged in any department of the various businesses or enterprises declared extra-hazardous by Section Three (3) of the Act, regardless of whether the duties of the injured employee are hazardous or not.

With reference to this question, Angerstein, on page thirty-four (34), Section seventeen (17), says:

"If an employer is engaged in an enterprise or business within Section 3 of the Act, then all his employees engaged in any department of such enterprise or business are under the Act. Such. employees, as well as such employers, have no right of election and no agreement that such employer and employee might enter into could take any such employee from under the Act.

Prior to amendment of Section 3, effective July 1, 1917, it was held in a number of cases that even though the employer was engaged in such extra-hazardous enterprise or business, yet an employee was not under the Act unless his actual duties were in the extra-hazardous part of the employer's business, or brought him in contact with such hazard, except in cases where the employer had affirmatively elected to come under the Act. However, subsequent to such amendment, and under the Act as now in force, the law is clear that if the employer is engaged in any enterprise or business within the provisions of Section 3, then all his employees in any department of such business or enterprise, are under the Act even though their duties involve no hazards and do not bring them in contract with any of the hazardous parts of any such enterprise or business."

The rule above set forth is announced in the case of *Illinois Printing and Publishing Co.* vs. *Ind. Com. 299 Ill. 189*, and *McNaught* vs. *Hines, 300 Ill. 167*.

—

Attention is also directed to that class of cases where an employer is engaged in two separate businesses, one within the Act, and the other not within the Act. In cases of that kind the provisions of the Act apply to all employees engaged in any department of the business of the employer which is within the Act, but have no application to the employees engaged in the business not within the Act, unless, as to them, the employer has elected to come within the Act.

In the case of *Peterson* vs. *Ind. Com., 315 Ill. 199-202*, the employer was engaged in farming, and also operated a sawmill on the same tract of land. The employee was injured while working in the sawmill, and the court held that although the employer was not under the Act as to the work on the farm, yet the operation of the sawmill was an independent enterprise of a hazardous nature, and as to such

enterprise the employer was under the Act. In that case the Court said:

"It is not required by the Workmen's Compensation Act that one shall be exclusively engaged in one of the hazardous occupations enumerated in the Act to make him liable for compensation. A man may engage in two kinds of business, one not within the Workmen's Compensation Act and the other may be within the Act because it is extra-hazardous. (*Vaughn's Seed Store* vs. *Simonini*, 275 Ill. 477; *Davis* vs. *Ind. Com.*, 297 Ill. 29). * * * * * * We are of the opinion that plaintiff in error and the deceased at the time of the accident were both under the provisions of the Workmen's Compensation Act."

The same conclusion was reached in the case of *Davis* vs. *Ind. Com.*, *297 Ill. 29*, where the employer owned a hardware business and also owned an apartment building which he rented at a .profit; also in the case of *Walsh* vs. *Ind. Com.*, 345 Ill. 366, where the employer was in the small loan business, and also owned eight (8) or ten (10) houses which he kept in repair.

Angerstein, on page thirty-nine (39), sets forth the rule as follows:

"The business itself is the determining factor. For illustration, an employer might own a factory containing power-driven machinery, etc., which automatically would bring it under the Act. All the employees of such factory would be under the Act regardless of what their duties were, just so long as were engaged in any department of the business, and this would include stenographers, salesmen, clerical help, etc. The same employer might own and operate a clothing store entirely separate and apart from the factory, in which store there were no appliances or machinery of any description. This clothing store, therefore, would not come under the Act automatically, and the employees, therefore, would not be under the Act unless and until the employer had filed his written acceptance of the Act with the "Industrial Commission.""

—

The question as to whether a business which is extra-hazardous in fact, but not specifically enumerated in Section Three (3) of the Act, comes within the provisions thereof, is also an important question in this connection. The case of *Cinofsky* vs. *Ind. Com.*, *290 Ill. 522*, arose prior to the time Section 7½ was added to the Act. The employer was engaged in operating a junk yard which, at that time, was not one of the extra-hazardous businesses enumerated in Section Three (3). The Court in that case, page 523, said:

"Counsel for plaintiffs in error argues that the business or enterprise in which plaintiffs in error were engaged did not bring it within the classification set forth in Section 3 of the Workmen's Compensation Act as extra-hazardous, and that as they had not elected to come under the Act they could not be held liable thereunder, unless it is shown, as a matter of fact, that the business was extra-hazardous. (*Hahnemann Hospital* vs. *Industrial Board*, 282 Ill. 316.) This court held in this last case that a hospital conducted under certain conditions might be a hazardous business while it would not be so under others. The mere receiving or buying of junk of a certain character might not be extra-hazardous, but that was not the whole of plaintiffs in error's business. The evidence shows that they were operating a junk yard,—that is, they were collecting, sorting and preparing junk and metals for market, and that in this work they were sometimes required to use shears driven by electric motor and an acetylene torch. There can be no question that the preparation of this junk for sale was a necessary part of the business and that the work was of such a nature as to bring it within the rule of being extra-hazardous in fact; that plaintiffs in error should be held within the Act on that account under the reasoning of this court in *Friebel* vs. *Chicago City Railway Co.*, 289 Ill. 76."

In two cases before the Industrial Commission, both of which involved employees of a detective agency, one acting as watchman of a building and the other assisting in patrol work, it was contended by the Respondent that the Industrial Commission had no jurisdiction to enter an award, because detective agencies are not enumerated in Section Three (3) of the Act. In each case the Industrial Commission awarded compensation, and the Circuit Court affirmed the award of the Commission. Petition for writ of error was filed in the Supreme Court in each case, and in each case it was denied. The result of such denial was to affirm the findings of the Industrial Commission, and to hold inferentially that if a business is extra-hazardous in fact, it comes within the provisions of the Act, although not specifically mentioned therein.

—

The furnishing of instruction to students is not one of the enterprises or businesses which are enumerated as extra-hazardous in Section Three (3) of the Compensation Act, and before any employee of the University is entitled to recover compensation under the Act, he must show that the University, or if he is engaged in an independent department, then the department in which he is working, is engaged in a business or enterprise which comes within some one of the

paragraphs of Section Three (3) of the Act, or that such business or enterprise is extra-hazardous in fact.

—

A brief consideration of the several paragraphs of Section Three (3) of the Act may help to clarify the situation:

Paragraph 1. *The erection, maintaining, removing, remodeling, altering or demolishing of any structure,* etc. From what has heretofore been said, it follows that the University is not engaged in the *business* of erecting, maintaining, removing, remodeling, altering or demolishing of any structure. It may be engaged *in the doing of such work* from time to time, but if so, such work is merely incidental to the general work of the University, and is not *the business* in which the University is engaged.

In the case of *Jacobi* vs. *Ind. Com., 342 Ill. 210,* the Supreme Court, in passing upon this question, said:

"Where the building is maintained, occupied and used by its owner in conducting a business in which he is engaged, as an incident or adjunct to the business, the relation of his business to the Workmen's Compensation Act and his relation to his employees is to be determined by the business and not by the maintenance of the building."

In the case of *Walsh* vs. *Ind. Com.,* 345 Ill. 366-370, the Supreme Court said:

"The line of demarcation between maintaining a structure as an incident rather than as a business, and the business of maintaining a structure, is not readily defined, but we are of the opinion that a safe rule is, that where one maintains buildings or structures for profit, whether that profit be as compensation for his services or by way of rentals received, and such maintenance requires a substantial portion of his time and attention, he must be said to be engaged in the business of maintaining a structure within the contemplation of the Workmen's Compensation Act."

Consequently any employee of the University who sustains an injury while engaged in the erection, removal, remodeling, altering or demolishing of any structure, is not by virtue of paragraph One (1) of Section Three (3) brought under the Compensation Act.

Paragraph 2. The same rule applies to construction, excavating or electrical work as provided in paragraph Two (2) of Section Three (3) of the Act.

Paragraphs 3, 4, 5, 9, and 10. The same may be said of paragraph Three (3) with reference to carriage by land,

water or aerial service, etc.; paragraph Four (4) with reference to the operation of any warehouse, etc.; paragraph Five (5) with reference to mining, surface mining or quarrying; paragraph Nine (9) with reference to the laying out or improvement of subdivisions, etc.; and paragraph Ten (10) with reference to the treatment of cross-ties, etc. ·

Paragraphs Six (6), Seven (7), Seven and one-half (7½) and Eight (8) are somewhat different, however. Such paragraphs provide as follows: .

"6. Any enterprise in which explosive materials are manufactured, handled or used in dangerous quantities.

7. In any enterprise wherein molten metal, or explosive or injurious gases or vapors, or inflammable vapors or fluids, or corrosive acids are manufactured, used, generated, stored or conveyed in dangerous quantities.

7½. Any enterprise in which sharp edged cutting tools, grinders or implements are used, including all enterprises which buy, sell or handle junk and salvage, demolish or reconstruct machinery, except as provided in sub-paragraph 8 of this section.

8. In any enterprise in which statutory or municipal ordinance regulations are now or shall hereafter be imposed for the regulating, guarding, use or the placing of machinery or appliances or for the protection and safeguarding of the employees or the public therein; each of which occupations, enterprises or businesses are hereby declared to be extra-hazardous: *Provided*, nothing contained herein shall be construed to apply to any work, employment or operations done, had or conducted by farmers and others engaged in farming, tillage of the soil, or stock raising, or to those who rent, demise or lease land for any such purposes, or to any one in their employ or to any work done on a farm or country place, no matter what kind of work or service is being done or rendered."

Paragraph 6. If, in the course of the performance of its regular business, or the exercise of its charter powers, any school or department of the University manufacturers, handles or uses explosive materials in dangerous quantities, then such school or department is automatically brought under the Act, and every employee of such department, regardless of his or her duties, is entitled to compensation under the Act for any accidental injury sustained by such employe, which arises out of and in the course of his or her employment.

Paragraph 7. If, in the course of its regular business, or the exercise of its charter powers, any school or department of the University manufactures, uses, generates, stores or conveys any molten metal, or explosive or injurious gases or vapors, or inflammable vapors or fluids, or corrosive acids in dangerous quantities, then such school or department is

automatically brought under the Act, and every employe of such department, regardless of his or her duties, is entitled to compensation under the Act for any accidental injury sustained by such employe, which arises out of and in the course of his or her employment.

Paragraph 7½. If, in the course of its regular business, or the exercise of its charter powers, any school or department of the University uses sharp-edged cutting tools, grinders, or implements, then such school or department is automatically brought under the Act, and every employe of such department, regardless of his or her duties, is entitled to compensation under the Act for any accidental injury sustained by such employe, which arises out of and in the course of his or her employment.

In this connection it might be well to consider the following quotation from Angerstein, appearing on page Fifty-three (53):

"The mere occasional or incidental use of a sharp-edged cutting tool, grinder or implement, should not be sufficient to bring an enterprise or business, not otherwise under the Act, within the provisions of paragraph 7½, but if such tools, even though hand tools, were customarily or regularly used and there was any hazard or danger in connection with their use, it would constitute an enterprise within the provisions of that paragraph."

The foregoing quotation is supported by the opinion of the Supreme Court in the case of *Garren* vs. *Ind. Com., 340 Ill. 95.*

In the case of *Therien* vs. *Ind. Com., 351 Ill. 166,* the employer was conducting a nursing home consisting of about forty (40) rooms and having two steam heating plants. It was contended, among other things, that the employer came within the provisions of paragraph 7½ of Section Three (3). The Supreme Court, in disposing of that contention said:

"The only sharp edged cutting tools were those knives used for the purpose of cutting roasts which are ordinarily found in a private home. Such tools do not come within the purview of Section Three (3) as sharp edged cutting tools, grinders or implements * * *. No other appliances of the character described in the Act were used in the nursing home."

The court held in that case that the employer did not come within the provisions of paragraph 7½.

Paragraph 8. By virtue of paragraph eight (8) of Section Three (3), all employers and all their employees en-

gaged in any department of any enterprise in which statutory or municipal ordinance regulations are now or shall hereafter be imposed for the regulating, guarding, use or placing of machinery or appliances or for the protection and safeguarding of the employees or the public therein, come within the Act. Angerstein, in speaking of this paragraph, on page fifty-four (54), says:

"The provisions of this paragraph bring within the provisions of the Act, many enterprises or businesses of many kinds or descriptions. Apparently it was intended as a general provision to bring under the Act practically every business or enterprise of an extra-hazardous nature that might not have been enumerated in the preceding paragraphs of Section 3. Generally speaking, it brings under the Act every enterprise or business concerning which there are statutory provisions or municipal regulations for the safeguarding of employees or the public against accidental injuries or death. The one definite limitation upon the provisions of this paragraph is that only a statutory or municipal regulation for the protection and safeguarding of the employees or of the public therein against accidental injury or death is sufficient to bring a business or enterprise within the provisions of said Paragraph 8. A statutory or municipal regulation applying to a business or enterprise is not sufficient unless it directly relates to the safeguarding against accidental injury or death of the employees therein or of the public in connection therewith."

In *Dietrich* vs. *Ind. Com., 286 Ill. 50,* the employer was conducting a retail grocery store and butcher shop with no power-driven machinery. It was contended that the business was brought within the provisions of the Compensation Act by virtue of the Child Labor Law, the Women's Ten Hour Law, the Health, Safety and Comfort Act, and also by a municipal ordinance requiring meat markets to be licensed.

In that case the Supreme Court, on page fifty-two (52), said:

"These statutory and municipal regulations are not of the character referred to in Clause 8 of Section 3 of the Workmen's Compensation Act. The title of that Act is "An Act to promote the general welfare of the people of this State by providing compensation for accidental injuries or death suffered in the course of employment within this State", etc. Compensation for accidental injuries or death is the subject of the Act and its language must be construed with reference to that subject. When it is said that it shall apply in any enterprise in which statutory or municipal ordinance regulations are imposed for the protection and safeguarding of the employee or the public therein, it refers to such regulation for the protection and safeguarding of employees or the public against accidental injuries or death. The ordinance and the statutes upon which the plaintiff in error relies are

not imposed upon the business in which the defendant in error was engaged for such purposes."

In the case of *Bowman Dairy Co.* vs. *Ind. Com., 292 Ill. 284,* the employee was a milk wagon driver, and it was contended, among other things, that the employer was under the Act by virtue of an ordinance regulating the width of stalls and stables in which horses were kept and the width of passageways and footways between the stalls. The court, following the Dietrich case, held that the ordinance was not of a character to bring the business under the Compensation Act.

In *City of Rock Island* vs. *Ind. Com., 287 Ill. 76,* the employee was working as a street sweeper and it was sought to bring the employer under the Act by reason of certain speed and traffic ordinances, but the Supreme Court held that such ordinances were not of the character contemplated by paragraph eight (8) and that the employer was not under the Act by virtue thereof.

In *East St. Louis Board of Education* vs. *Ind. Com., 298 Ill. 61,* the employee was working as a janitor in a two-story school building with a basement containing a steam boiler for heating purposes, and was injured while washing windows on the second floor of said building. The boiler was subject to city inspection and it was contended that the employer was thereby brought under the Compensation Act. The Supreme Court, in upholding such contention, said:

"It seems self-evident that the inspecting of a boiler in the basement of a schoolhouse containing many children is certainly the guarding of appliances for their protection, the same as would be true in the requirement of fire escapes. * * * It would seem necessarily to follow by the working of Sub-section 8 of Section 3 of the Workmen's Compensation Act that this statute and the municipal regulations brought this building under the provisions of said section of the Act."

In *Hannemann Hospital* vs. *Ind. Com., 282 Ill. 316,* the evidence showed that the hospital building was a seven-story structure with two power-driven elevators, and was equipped with engines and high-pressure boilers, and a system of electric wiring and apparatus for signals throughout the building. There were city ordinances requiring elevators in such buildings, also with reference to fire escapes, the inspection of boilers, and the installation of electric wiring and appara-

tus. The Supreme Court, in holding that such regulations brought the employer under the Act, said:

"The ordinance regulations of Chicago heretofore set forth as applying to buildings of the class to which appellee's building belong, and to the machinery, equipment and appliances therein and requiring inspection of the same, were unquestionably imposed for the protection and safeguarding of the employees and the public, and bring the business or enterprise in which appellee was engaged within the terms of Clause 8 above set forth."

In *Ascher Bros. Amusement Enterprises* vs. *Ind. Com.*, 311 Ill. 258, the employee was working as an usher in a moving picture theatre in which the projecting machine was installed in a fireproof booth. The city ordinances required the booth to be constructed according to certain specifications, and provided for the inspection thereof by the fire marshal;—and the court held that such ordinance was enacted for the safeguarding of the employees and the public and brought the employer within the provisions of Paragraph eight (8).

Some of the statutory regulations which seem to be included within the terms of the classification of Paragraph eight (8) are the following:

The Health, Safety and Comfort Act, Cahill's Statutes, 1933, Chapter 48, Paragraph 143.

The Building Construction Act, Cahill's Statutes, 1933, Chapter 48, Paragraph 123.

The Blower Act, Cahill's Statutes, 1933, Chapter 48, Paragraph 133.

The Fire Escape Act, Cahill's Statutes, 1933, Chapter 38, Paragraph 248.

In speaking of the Fire Escape Act, Harper, in his "Workmen's Compensation," Page ninety-four (94), says:

"This Act requires fire escapes of a specified design, on all buildings four or more stories in height. It is believed that this Act would not operate to bring within the classification of the Compensation Act, any employers except those engaged in the "occupation, enterprise or business," of operating or conducting a building, to which the regulations of the Fire Escape Act are applicable. The compensation law was obviously not intended to apply to mere owners of buildings or to lessees thereof, and unless there is conducted in the building some industry covered by the classification of Section 3 of the Act, or unless the building is subject to the provisions of the fire escape law and is being conducted by the employer (either as owner or lessee) as an "occupation, enterprise or business" it could not be properly included within the classification of hazardous enterprises, to which alone the provisions of Section 3 are applicable."

With reference to the exception in Sub-paragraph eight (8), as to work done by farmers and others engaged in farming, tillage of the soil or stock raising, or to any work done on a farm, the opinion of the court is fully set forth in the case of *S. E. Bunting, University of Illinois No. 611,* and under the very broad terms of the Illinois Compensation Act, any person engaged in farming, tillage of the soil or stock raising, or in the doing of any kind of work which is in its nature a part of farming, on a farm or country place, does not come within the provisions of the Act.

—

### CONCLUSION.

From a consideration of the foregoing authorities, it seems that the following conclusions logically follow:

1. That the University is an employer within the meaning of the Act.

2. That all employees of the University are employees within the meaning of the Act.

3. That the University is engaged in an ''enterprise'' within the meaning of the Act.

4. That the University consists of a number of different departments or schools which are practically complete in themselves; that therefore it is in the same position as an individual or corporation which is engaged in several different businesses or enterprises, some of which may be extra-hazardous and some not; that each department or school must therefore be considered a separate business or enterprise, and the liability of the University in each case depends upon whether that particular school or department comes within any of the provisions of Section three (3) of the Act, or is engaged in a business or enterprise which is extra-hazardous in fact.

5. That the University is not engaged in any business or enterprise which comes within the provisions of Paragraphs one (1), two (2), three (3), four (4), five (5), nine (9), or ten (10) of Section three (3) of the Act.

6. That the business or enterprise in which the University, or the several schools or departments thereof, is engaged, may come within the provisions of Paragraphs six (6), seven (7), seven and one-half (7½), or eight (8); that

the question as to whether the University does come within the provisions of any of such paragraphs is a question of fact to be determined by the evidence submitted in each particular case.

7. That under the very broad terms of the Illinois Workmen's Compensation Act, all farm work done by farmers and others engaged in farming, tillage of the soil or stock raising, and all work which is in its nature a part of farming, and which is done on a farm or country place, is excepted from the provisions of the Workmen's Compensation Act.