(No. 30027.—

CATERPILLAR TRACTOR Co., Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(WILLIAM KILGUS, Defendant in Error.)

*Opinion filed September 18, 1947.*

MILLER, WESTERVELT, JOHNSON & THOMASON, of Peoria, (DAVID A. NICOLL, of counsel,) for plaintiff in error.

ROBERT H. ALLISON, of Pekin, for defendant in error.

Mr. JUSTICE WILSON delivered the opinion of the court:

William Kilgus filed with the Industrial Commission an application for adjustment of claim against the Cater-

pillar Tractor company, herein referred to as defendant, alleging that he sustained an accidental injury on May 2, 1944, arising out of and in the course of his employment. An arbitrator awarded compensation at the rate of $17.63 per week for a period of 27¾ weeks for temporary total incapacity and for the further period of 190 weeks for the loss of his right leg by amputation, and $373.20 for medical and hospital services. Upon review, the Industrial Commission set aside the arbitrator's award and entered its own award, by which claimant, in addition to the compensation allowed by the arbitrator, was also awarded the sum of $175 in lieu of defendant furnishing him with an artificial limb. Upon application duly made, the circuit court of Peoria county issued a writ of *certiorari*. Claimant moved to quash the writ, alleging that the court was without jurisdiction because he had not been served in Peoria. county, but in Tazewell county where he resided. Thereupon, defendant filed a cross motion for change of venue to the circuit court of Tazewell county. The motion to quash the writ was denied, the motion for change of venue was granted and the cause was transferred to the circuit court of Tazewell county. Claimant then filed a motion in .the circuit court of Tazewell county to quash the writ on the ground of lack of jurisdiction, contending that the circuit court of Tazewell county had no original jurisdiction because it had not issued the writ of *certiorari* and, further, that it had no jurisdiction by reason of the change of venue because the circuit court of Peoria county lacked jurisdiction either to issue the writ or to transfer the cause. This motion was denied. Subsequently, the circuit court of Tazewell county confirmed the decision and award of the Industrial Commission. We have allowed defendant's petition for writ of error for a further review of the record.

Before the present controversy can be considered on its merits, disposition must first be made of claimant's conten-

tion that the circuit court of Tazewell county was without jurisdiction to review the decision and award of the Industrial Commission. Under the Workmen's Compensation Act, only the circuit court of the county where any of the defendants may be found has the power to review a decision of the Industrial Commission, and the action to review must be commenced within twenty days of receipt of notice of the decision and award. (Ill. Rev. Stat. 1945, chap. 48, par. 156(f)(1).) Although a *praecipe* for writ of *certiorari* and writ of *scire facias* and the prerequisite bond were filed in the circuit court of Peoria county within the allotted twenty days, process was served on claimant, the defendant in the circuit court, in Tazewell county. As a consequence, claimant argues that the circuit court of Peoria county was totally without jurisdiction either to review the decision and award or to transfer the cause, and that the circuit court of Tazewell county, in turn, was without jurisdiction to enter a judgment on the merits because no action to review the decision and award had ever been commenced in that court. The argument is devoid of merit, the issue having been decided adversely to claimant in *Central Illinois Public Service Co.* v. *Industrial Com.* 293 Ill. 62. There, this court held that the statute, (Ill. Rev. Stat. 1945, chap. 146, par. 36,) permitting a change of venue when any action or proceeding has been commenced in the wrong court or county, is applicable to workmen's compensation cases. More specifically, the *Central Illinois Public Service Co. case* decided that even though the circuit court issuing the writ of *certiorari* to the Industrial Commission has no jurisdiction to review the award because no defendant resides in the county, the cause may nonetheless be transferred to the circuit court of the county wherein one of the defendants resides and that such latter court has jurisdiction to enter judgment on review.

Proceeding to the merits, defendant urges the following grounds for reversal: (1) the finding that claimant

suffered an accidental injury arising out of and in the course of his employment is not sustained by the evidence; (2) the award for medical and hospital services is without foundation because claimant elected to engage his own physician and hospital services at his own expense, and (3) the Industrial Commission failed to comply with the mandatory provisions of section 8(e)(17½) of the Workmen's Compensation Act by computing the principal award without making any deduction for claimant's prior loss of the four small toes of his right foot. The first question raised by defendant requires a brief summary of the testimony adduced at the hearing. Claimant was employed by defendant from 1935 to September 1942, when, as the result of a nonindustrial accident, he suffered an injury to his right foot, the extent of which is not entirely clear. While it is agreed that claimant lost the four small toes of his right foot, it has not been determined whether part of the foot itself was also amputated. In any event, the wound was slow to heal and claimant remained unemployed until the summer of 1943 when he obtained work with another company. The work terminated at the end of the year and he then sought re-employment with defendant. After several medical examinations and a letter from Dr. Teter, his own doctor, stating that the foot was completely healed, claimant was rehired on March 2, 1944, and set to work on fuel pumps on the assembly line.

Claimant testified that, on May 2, 1944, he struck his right foot against the assembly line and suffered a cut on the outside of the foot just below the ankle. There were no witnesses to the accident. Claimant immediately reported the accident to the shop supervisor, and the supervisor, appearing as a witness for defendant, admitted that he had been so notified. He further testified, however, that, during March and April, Kilgus suffered frequent swelling and draining in his foot; that after the alleged

accident, he told Kilgus to report to first aid, and that he refused so to do. The general foreman also testified that claimant's foot was badly swollen prior to May 2. Claimant denied that he had experienced any trouble with his foot in the months prior to the accident, and denied that he had ever been told to go to first aid, either before or after the accident. Claimant finished his shift on May 2 and then went to see Dr. Teter. The doctor testified that the foot had been completely healed in February, 1944, and that, on May 2, he treated Kilgus for a bruising laceration on the lateral portion of the right foot. Although the condition of the foot became progressively worse, Kilgus continued to work until May 12, when the decision to amputate was made. Dr. Teter consulted Dr. Cooper concerning the operation, the latter testifying that he examined Kilgus briefly, saw no evidence of a recent trauma, and recommended the foot be amputated six or seven inches above the ankle bone. On rebuttal, Kilgus maintained that the bandage on his foot had not been removed during Dr. Cooper's examination. On May 16, Dr. Teter amputated the right foot. Gas gangrene developed and in a second operation the leg was cut off five inches above the knee, Dr. Cooper performing the surgery. Claimant did not again obtain employment until November 14, 1944. In the meantime, he submitted several statements of claim under a nonindustrial group accident and health insurance policy, in which he stated the cause of his disability to be "Amputated leg due to infected ulcer" and that the accident occurred on "Assembly line of Caterpillar Tractor Co." when he "Burst foot open on corner of a motor."

Claimant further testified that, prior to the operation, while obtaining insurance blanks, he informed one Becker, employed by defendant in its insurance department, that his foot had to come off, Becker replying that as long as the foot had to be amputated, it did not make any differ-

ence who performed the operation. Becker was not called as a witness.

Upon the record thus made, defendant contends the Industrial Commission's finding that claimant suffered an accidental injury arising out of and in the course of his employment is not sustained by the evidence. The rule has been both frequently and consistently announced that the findings of the Industrial Commission will not be set aside upon review unless contrary to the manifest weight of the evidence. (*Cinch Manufacturing Corp.* v. *Industrial Com.* 393 Ill. 131; *Peabody Coal Co.* v. *Industrial Com.* 349 Ill. 160; *O'Callaghan* v. *Industrial Com.* 290 Ill. 222.) There must be something more than the mere existence of conflicting testimony to warrant the conclusion that a finding of fact is erroneous. The testimony of Kilgus and Dr. Teter, together with the admission of the shop supervisor, amply supports the decision of the commission. Indeed, it must be observed that the testimony in favor of claimant constitutes a preponderance of the evidence.

Defendant next attacks the award for medical expenses. The Workmen's Compensation Act imposes a mandatory duty on the employer to furnish first aid and all reasonably necessary medical, surgical and hospital expenses thereafter required, and yet permits the employee to elect to procure his own physician and hospital services at his own expense. (Ill. Rev. Stat. 1945, chap. 48, par. 145(a).) In the absence of an employee's request for medical assistance, the employer is without liability in this regard, unless it can be shown that the employer was in possession of facts from which he might reasonably be presumed to know or to believe that such services were necessary. (*Raymond* v. *Industrial Com.* 354 Ill. 586; *Chicago-Sandoval Coal Co.* v. *Industrial Com.* 294 Ill. 351.) Likewise, the employer is absolved from liability where proffered medical services have been refused by the employee. Adopt-

ing the view of the contradictory evidence most favorable to defendant as to whether claimant refused to go to first aid following the accident, it does not follow that claimant's rejection of the proffered first-aid treatment and his visit to Dr. Teter amounted to an election to forego his rights to all necessary surgical and hospital services. At the time of the accident, it appeared that the injury was of a minor nature and that only first aid was required. It could not be foreseen that the laceration would result in the foot and leg becoming so infected and swollen as to twice require major surgery. In our view of the statute, claimant's action merely absolved defendant from any liability for the expenses of first-aid treatment, defendant remaining liable for all medical, surgical and hospital services of consequence which might thereafter become necessary, unless these, too, were subsequently refused by claimant. On the other hand, it appears that claimant, upon learning that amputation was necessary, made a request for surgical and hospital services to Becker and the request was refused. In any event, by virtue of the shop supervisor's knowledge that claimant's foot was so badly infected that he was forced to quit work on May 12 and the notice to Becker that amputation was necessary, defendant was in possession of facts from which it must reasonably be presumed to have known that claimant required surgical and hospital services. Under either view, by the request for medical services or defendant's knowledge of the need for such services, claimant made a sufficient showing to entitle him to the award. *Raymond* v. *Industrial Com.* 354 Ill. 586; *Chicago-Sandoval Coal Co.* v. *Industrial Com.* 294 Ill. 351.

Defendant's last assignment of error involves a construction of subsection 8(e)(17½) of the Workmen's Compensation Act. The subsection provides: "In computing the compensation to be paid to any employee who, before the accident for which he claims compensation, had

before that time sustained an injury resulting in the loss by amputation or partial loss by amputation of any member, including hand, arm, thumb or fingers, leg, foot, or any toes, such loss or partial loss of any such member or the sight of an eye shall be deducted from any award made for the subsequent injury, and for the permanent total loss of use or the permanent partial loss of use of any such member for which compensation has been paid, then such loss shall be taken into consideration and deducted from any award for the subsequent injury." Ill. Rev. Stat. 1945, chap. 48, par. 145(e)(17½).

For the specific injury of the loss of his right leg the Industrial Commission awarded claimant compensation for the full period of 190 weeks. (Ill. Rev. Stat. 1945, chap. 48, par. 145(e)(15).) Because claimant's prior loss by amputation was not taken into consideration and deducted from the 190 weeks' compensation normally allowable for the loss of a leg, defendant contends that the award is contrary to the plain meaning of the statute. Defendant takes the position that it is entitled to a deduction of 135 weeks for the prior loss of the right foot or, in the alternative, 48 weeks for the loss of the four small toes. (Ill. Rev. Stat. 1945, chap. 48, pars. 145(e)(14) and (9).) In support of the existing award, claimant argues that under the statute a deduction may properly be made only where compensation has been paid for the prior injury. Under claimant's construction, the Industrial Commission is without authority to reduce his award for the subsequent injury because the first loss was noncompensable.

Subsection 8(e)(17½) has not heretofore been presented for construction. Enacted in 1927, the historical background of the subsection is found in certain inequities in the Workmen's Compensation Act brought to light in *Chicago Bridge and Iron Co.* v. *Industrial Com.* 316 Ill. 622. There, it was held that an employee was entitled to full compensation for the loss of the sight of an eye, not-

withstanding the fact he had previously injured the same eye while in the employ of the same employer and had been paid compensation for the loss of ninety per cent of the use of the eye. Although it is abundantly clear that the general intention of the legislature in enacting subsection 8(e)(17½) was to limit an employer to liability to pay only for the loss resulting directly from the last injury, the terminology employed is complex and somewhat confusing. A construction of the statute raises two questions: (1) When is a deduction for a prior injury properly allowable and (2) What is the correct method of determining the amount of the prior loss. Only the first issue is argued in the briefs.

In connection with the first question presented it must be recognized that injuries and the losses arising therefrom may be classified as total or partial amputation of a member or the loss of use of a member, compensable or noncompensable, or by any combination of the foregoing. Because the statute consistently refers to compensation for the second injury as "any award for the subsequent injury" it appears that the precise nature of the second injury is immaterial so long as it is compensable. As to prior injuries, however, the General Assembly has obviously sought to make a distinction between compensable and noncompensable injuries, and between loss by amputation and loss of use of a member. The circumstances accompanying the first injury thus give rise to four possible classifications: one, noncompensable loss or partial loss of use of a member; two, noncompensable amputation or partial amputatation; three, compensable loss or partial loss of use of a member, and four, compensable amputation or partial amputation. Subsection 8(e)(17½) consists of a compound sentence, the first part of which requires a deduction in a subsequent award where the prior injury resulted in loss by amputation regardless of whether compensation was paid, the second part of the sentence authorizing

a deduction in favor of the employer where the first injury resulted in the loss of use of a member for which compensation has been paid. With reference to the assumed classification of prior injuries, the first part of subsection $8(e)(17\frac{1}{2})$ covers classes two and four, while the remainder of the statute deals only with cases of the third class. From the absence of any provision authorizing deductions for injuries of the first class, we conclude that full compensation is awardable for a second injury to a member where the same member or a part thereof was subject to a noncompensable prior injury resulting only in loss of use or partial loss of use, as distinguished from loss by amputation or partial loss by amputation. Presumably, the General Assembly was cognizant of the probability that the difficulty of the proof or disproof of such a prior injury would lead to much controversy and litigation. Parenthetically, we observe that in all three classes of cases where deductions are authorized, the prior injury, being either an amputation, compensable or otherwise, or a loss of use for which compensation has been paid, is always capable of definite and absolute proof.

In the case at bar, we are dealing with a prior injury of the second class, specifically a noncompensable prior injury resulting in the admitted amputation of the four small toes of the right foot and the disputed loss by amputation of part of the foot itself. As related, claimant urges that the statute be construed to mean that an award for a subsequent injury shall be reduced only in the event the prior injury was compensable. Claimant thus seeks to transpose the phrase "for which compensation has been paid" from the second to the first part of the sentence. Not only does the interpretation contended for do violence to grammatical construction, but also it makes completely superfluous the loss-by-amputation provision of this already abbreviated subsection. Plainly, the argument is without merit. Since claimant's prior injury resulted in a loss by

amputation, the absence of prior compensation is totally immaterial. In computing the award for the specific loss of claimant's right leg, the Industrial Commission should have at least deducted the admitted loss of the four toes of the right foot and the award, computed on the basis of the full loss of a leg, must be set aside.

The question remains as to the proper method of computing the exact amount of the deduction. In amputation cases the statute merely provides "such loss or partial loss * * * shall be deducted from any award for the subsequent injury," while in cases where the prior injury resulted in total or partial loss of use for which compensation has been paid "such loss shall be taken into consideration and deducted from any award for the subsequent injury." The consideration of a prior loss before deducting it from an award does not accomplish a different result from a plain deduction of the prior loss, and the two provisions, otherwise identical in phraseology, are deemed to be actually identical in substance. In the main, there are two possible methods of determining the loss resulting from the first injury. The prior loss can be computed at the fixed statutory rate for compensable injuries or it can be evaluated by a consideration of all the facts and circumstances of the particular case. Where the prior injury resulted in a loss for which compensation has been paid, it is obvious that the award should be reduced by the number of weeks for which compensation was previously awarded. No other construction is tenable. The first award is binding on both the employee and his employer at the time of the subsequent injury. To permit the Industrial Commission to evaluate a prior compensable loss on the basis of extraneous factors is to permit the commission to minimize the first loss and reduce the subsequent award by a smaller number of weeks than the number for which compensation was previously awarded. The potential result of such method of computation is two awards for

injuries to the same member the total of which is in excess of the maximum compensation for the full loss of the member. This is the very thing the legislature sought to eliminate through the enactment of subsection 8(e)(17½). Under the guise of judicial interpretation, we cannot reinstate in the Workmen's Compensation Act a concept contrary to the intent of the General Assembly. The method of computing the deduction by a consideration of all factors in the case must be discarded, at least in cases where compensation has been paid for the prior injury.

In cases of the second class, however, where the prior injury resulted in loss by amputation for which no compensation was paid, the fact that no award was made for the first injury lends some justification to the interpretation that the Industrial Commission has been allowed wide discretion in evaluating the prior loss and that the statutory rate is not controlling. Without any reflection on the desirability of such interpretation in cases of the second class, we observe that, as to methods of computing deductions, the statute does not expressly or impliedly differentiate between amputation cases and cases involving loss of use of a member for which compensation has been paid, nor does it differentiate between compensable and noncompensable amputations. Because the statutory provisions relative to deductions are the same in substance and because exact and clearcut standards of prior injuries and the computation of compensation for prior injuries are characteristic of subsection 8(e)(17½), we conclude that the legislature intended that a deduction for a prior noncompensable amputation should be computed at the statutory rate. This construction is substantiated by the fact that the subsection in question has been inserted in the midst of a long series of provisions establishing fixed compensation for specific losses. Had the legislature intended a different and variable standard to be applicable to

subsection 8(e)(17½), it would have clearly so provided. In the absence of a provision to the contrary, the fixed rates of compensation established by the adjacent paragraphs must be deemed to have been adopted. Where the prior injury was compensable, the deduction shall be computed on the basis of the prior award. Where the prior injury was a noncompensable amputation the deduction shall be determined at the statutory rate just as if the first injury had been compensable.

Since the prior injury with which we are here concerned resulted in the loss by amputation of the four small toes of the right foot and possibly part of the foot itself, the question is presented as to whether the award for compensation for 190 weeks for the full loss of a leg should be reduced by 135 weeks, the loss of a foot, or by 48 weeks, the loss of four small toes, or by some intermediate number of weeks for the partial loss of a foot. The extent of the prior injury and an estimation of the prior loss, if the first injury is found to be a partial loss by amputation rather than a complete loss of a member, are issues to be decided by the Industrial Commission in the first instance and issues which the commission has not yet adjudicated. The judgment of the circuit court of Tazewell county and the award of the Industrial Commission are therefore reversed and the cause is remanded to the circuit court, with directions to further remand the cause to the Industrial Commission for further hearing, including the introduction of additional evidence on the issues of the extent of prior injury and the computation of the loss resulting therefrom, and for the entry of a decision and award in conformity with the views herein expressed.

*Reversed and remanded, with directions.*