(No. 26107.—<span style="background:black">    </span>

LOUELLA FITTRO, Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(THE BOARD OF EDUCATION OF SCHOOL DISTRICT NO. 100, Plaintiff in Error.)

*Opinion filed Sept. 15, 1941—Rehearing denied November 12, 1941.*

SHAW, J., dissenting.

CRAIG & CRAIG, for plaintiff in error.

HARRY I. HANNAH, and THOMAS R. FIGENBAUM, (ROGER FRUIN, of counsel,) for defendant in error.

Mr. JUSTICE SMITH delivered the opinion of the court:

This is a writ of error granted by this court to review a judgment of the circuit court of Coles county. The judgment of the circuit court reversed the decision of the Industrial Commission and ordered plaintiff in error to pay compensation to defendant in error for the death of her husband, James E. Fittro.

The facts are not in dispute. James E. Fittro was employed by plaintiff in error as janitor of the Lincoln school in Mattoon, Illinois. His ordinary duties consisted of cleaning and firing the furnace, making minor repairs, and performing whatever odd jobs might be required of him by the principal in the ordinary conduct of the school. He was sixty-three years of age and was of average size and appearance for his age. On December 15, 1938, Fittro went to work about six o'clock in the morning, which was his usual hour to report for duty. A Christmas entertainment was to be held in the school building that evening. Fittro put a Christmas tree on a base in the auditorium during the forenoon. In the afternoon he helped others trim the tree and string lights thereon. In doing this he was required to work on a stepladder, as the tree was about 10 feet in height. There were two boilers installed in the basement of the building. On the day in question, the weather was moderate and only one boiler was in use. About 6:00 o'clock P. M. he returned to his home and ate his dinner. He looked tired but otherwise appeared to be in his usual health. He remained at his home about one hour and then went back to the school building with his wife. When he reached the school building he first went upstairs and then to the basement, evidently for the

purpose of attending to the furnace. Among other things he was required to do that evening, before or during the performance, was to move a number of chairs into the room where the entertainment was held.

When the entertainment was over, shortly after 9:00 o'clock in the evening, defendant in error saw her husband return to the basement. She waited for him about fifteen minutes. When he did not return she went to the basement and found him dead. The superintendent of the school and a physician were summoned. They found Fittro in a reclining position, sitting on a ramp or incline which was about 6 feet long and 4 feet wide. This ramp was used in wheeling coal in a wheelbarrow from the coal room to a pit where the boilers were located. His glasses were on and he was in a half-reclining, relaxed position, due to the position of the ramp; his legs were spread apart; his hands were at his side; his pipe which he had been smoking had fallen from his mouth and lay beside him; the wheelbarrow used by him in moving coal from the coal room to the furnace was at the foot of the ramp and against the front of the furnace; the furnace doors were open; there were only two or three small lumps of coal in the wheelbarrow; there was fresh coal on the fire in the furnace; there was no evidence of any external injury. The physician examined Fittro as soon as he arrived and determined that he was dead. Fittro had shown no previous illness subsequent to July, 1938, when he had a cataract removed from his eye. At the time of this operation he underwent a routine physical examination preliminary to the operation which was, in all material respects, negative. Dr. Summers who examined Fittro shortly after his death, testified that in his opinion he died from an attack of myocarditis, meaning a heart condition that weakens the heart muscles. That the immediate cause of death was acute dilation of the heart and that he did not find any secondary or contributing cause. At the hearing before the arbi-

trator, Dr. Nolan, whose qualifications were stipulated, testified that when the heart is weak it suddenly loses its elasticity and remains dilated because the muscles have lost their power to contract. He further testified that if a person was affected with diseased or weakened blood vessels that might result in an acute dilation of the heart in the performance of his usual duties. In response to a hypothetical question, Dr. Nolan testified that in his opinion death was caused by an acute dilation of the heart. He further testified that acute dilation of the heart might be brought on by heavy work, or hard work, or any undue or unusual exertion. In answer to a further hypothetical question, embracing the facts surrounding the death of Fittro, he expressed the opinion that death was caused by an acute dilation of the heart brought about by fatigue and over-exertion. That the fatigue and over-exertion was caused by a nervous strain resulting from the work he had been required to do on the day in question.

The arbitrator found that Fittro did not sustain an accidental injury arising out of and in the course of his employment. On review, the Industrial Commission affirmed the decision of the arbitrator. No additional evidence was heard on the hearing before the commission. On *certiorari,* the circuit court of Coles county entered an order setting aside the decision of the commission, and found that Fittro sustained accidental injuries arising out of and in the course of his employment, and made an award in favor of defendant in error, in accordance with the provision of section 19 (f) (2) of the Workmen's Compensation act. Ill. Rev. Stat. 1939, chap. 48, par. 156 (f) (2).

It is conceded that both plaintiff in error and Fittro were subject to the provisions of the Workmen's Compensation act, and that Fittro was, at the time of his death, at a place where the performance of his duties under his employment required him to be. The only contested issue in the case is whether Fittro's death was caused by an

accidental injury arising out of and in the course of his employment.

It is the contention of plaintiff in error that there was no evidence showing any injury to Fittro and no evidence that his death was due to an accident arising out of and in the course of his employment. It is further contended that it was the duty of the circuit court to confirm the decision of the Industrial Commission because, it is claimed, that decision was not against the manifest weight of the evidence.

The burden was on defendant in error to prove that the death of the employee was the result of an accident arising out of and in the course of his employment. This rule is too well settled to require an extended citation of authorities. (*Hahn* v. *Industrial Com.* 337 Ill. 59; *Inland Rubber Co.* v. *Industrial Com.* 309 id. 43.) The rule is equally well settled that an award, to be sustained, must be founded upon facts and inferences reasonably drawn from facts proved by the evidence, and cannot be based upon guess or conjecture. *Mt. Olive Coal Co.* v. *Industrial Com.* 374 Ill. 461.

In this case the undisputed evidence is that Fittro's death was caused by an acute dilation of the heart. The proof does not show that he was suffering from any pre-existing disease which contributed to his death. The proof further shows that an acute dilation of the heart may result from over-exertion and fatigue which causes a nervous strain. The record further shows that on the day in question Fittro had performed considerable extra work in the course of his employment; that he also put in longer hours than usual, due to the fact that the entertainment was held in the evening after the end of his usual day's work. The character of the work he was doing in trimming and arranging the Christmas tree, which necessitated him going up and down a ladder, subjected him to unusual exertion. The nervous strain resulting from this extra work, and

the extra exertion, might easily and logically result in the acute dilation of his heart, which caused his death. He suffered the attack at a place where the duties of his employment required him to be, and while he was in the discharge of those duties. The surroundings clearly show that he was putting coal in the furnace when he suffered the attack which resulted in his death.

This case is entirely different from the line of cases in which the death was caused by organic heart trouble or other pre-existing disease. As pointed out by this court in the case of *Jakub* v. *Industrial Com.* 288 Ill. 87, where the death was caused by a pre-existing disease, it must be shown that the disease was aggravated and accelerated by an accidental injury sustained in the course of the employment. (*Peoria Railway Terminal Co.* v. *Industrial Board,* 279 Ill. 352.) Where there is a pre-existing disease, in order to bring the case within the rule, there must be an accidental injury as the immediate, or proximate, cause of death. The statute provides compensation for accidental injuries, or death, suffered in the course of employment. An accidental injury is one which occurs in the course of the employment, unexpectedly and without the affirmative act or design of the employee. It is something which is unforeseen and not expected by the person to whom it happens. (*Matthiessen & Hegeler Zinc Co.* v. *Industrial Board,* 284 Ill. 378.) Thus, in the pre-existing disease cases, the evidence must show an aggravation, or acceleration, of the disease, by some accidental injury. That rule, however, does not apply to a case of this kind where no pre-existing disease is shown to exist. Here it is undisputed that the death of Fittro was caused by an acute dilation of the heart. The only question is whether the cause of death was accidental and arose out of and in the course of his employment. There is no question but what his death resulted in the course of his employment. The words "accident" and "accidental injury," as used in

the Workmen's Compensation act, have been defined to mean an injury that happens without design and which is unforeseen and not expected by the person to whom it happens. Such words are to be construed in connection with the various provisions of the act and the purposes of its enactment. Such meaning cannot be determined alone from any definition found in a dictionary. These words imply that an injury to be accidental, or the result of an accident, must be traceable to a definite time, place and cause. But, if there is such a definite time, place and cause, and the injury occurs in the course of the employment, the injury is accidental within the meaning of the act, and the obligation to provide and pay compensation arises.

In the case of *City of Joliet* v. *Industrial Com.* 291 Ill. 555, this court, quoting from *Matthiessen & Hegeler Zinc Co.* v. *Industrial Board, supra,* said: "While it is not intended, and perhaps not possible, to give a definition of the words used in the act as applied to all possible circumstances, it may safely be said that an injury is accidental, within the meaning of the act, which occurs in the course of the employment unexpectedly, and without the affirmative act or design of the employee." In this case, at the time Fittro suffered the acute heart dilation he was in the place where his employment required him to be and such attack was suffered in the course of his employment.

The evidence shows that over-exertion and fatigue is liable to induce and bring about acute dilation of the heart. The proof further shows that during the day preceding and up to the time of the accident, Fittro, in the discharge of his duties under his employment, was subjected to unusual exertion and activity of a character which was calculated to bring about an acute dilation of the heart.

As said by this court, in *City of Joliet* v. *Industrial Com. supra,* the attack was suffered at a definite time and place and the cause of the attack arose out of and in the course of the employment. This brings the case clearly within the

definition of an accidental injury within the meaning of the act.

This case is, therefore, clearly distinguishable from the cases above referred to where death resulted from a pre-existing disease and where there was no injury received at a definite time and place which could be regarded as having accelerated or aggravated the pre-existing disease.

The judgment of the circuit court setting aside the decision of the Industrial Commission, and entering an award in favor of defendant in error, was right, and that judgment is affirmed. *Judgment affirmed.*

Mr. Justice Shaw, dissenting.