(No. 26458.—

PERKINS PRODUCTS COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(FLORENCE O'HARA, Defendant in Error.)

*Opinion filed January 22, 1942.*

James A. Dooley, for plaintiff in error.

Norman Peters, for defendant in error.

Mr. Justice Smith delivered the opinion of the court:

This case is here on writ of error granted by this court to review the judgment of the circuit court of Cook county.

Upon a hearing before an arbitrator of the Industrial Commission, an award was made in favor of defendant in error, Florence O'Hara, in accordance with the provisions of the Workmen's Compensation act. The arbitrator found that on February 22, 1940, defendant in error sustained an accidental injury which arose out of and in the course of her employment by plaintiff in error. He found that the injury sustained resulted in the permanent loss of five per cent of the use of her left arm. An award was made in accordance with the finding.

On appeal to the Industrial Commission, the decision of the arbitrator was affirmed, but the amount of the compensation was increased. The commission found that, as a result of the injury, defendant in error had sustained ten per cent loss of the use of the arm. On *certiorari* to the circuit court, an order was entered confirming the decision of the Industrial Commission.

· Plaintiff in error, by this writ of error, seeks to have the decisions of the circuit court and the commission reversed on two grounds: First, that the proof shows "an occupational neurosis" and not "an accidental injury." Second, it is claimed that the award is without substantial foundation in the evidence.

An award in favor of the employee having been entered by the Industrial Commission, the question presented by the record is whether such decision is contrary to the manifest weight of the evidence. Unless the finding of the commission is contrary to the manifest weight of the evidence, this court will not disturb such finding. *Chicago Park District* v. *Industrial Com.* 372 Ill. 428; *Thomson* v. *Industrial Com.* 372 id. 258; *Rodriguez* v. *Industrial Com.* 371 id. 590; *Board of Education* v. *Industrial Com.* 368 id. 564; *Mt. Olive & Staunton Coal Co.* v. *Industrial Com.* 367 id. 574.

Where the facts are not in controversy, and the sole question is whether the employee received injuries which arose out of and in the course of the employment, the question is one of law. (*Ervin* v. *Industrial Com.* 364 Ill. 56.) In such case, the decision of the Industrial Commission will not be reversed if there is any evidence fairly tending to support the decision. (*Halsted Co.* v. *Industrial Com.* 287 Ill. 509.) If there is in the record any competent evidence upon which the findings of the commission can be based, this court will not weigh the evidence or disturb the findings. *Chicago Steel Foundry Co.* v. *Industrial Com.* 286 Ill. 544.

The words "accident" and "accidental injury," as used in the Workmen's Compensation act were meant to include every injury, suffered in the course of employment, for which there was an existing right of action at the time the act was passed; also to extend the liability of the employer to make compensation for injuries for which he was not previously liable and to limit such compensation. If an injury can be traceable to a definite time, place and cause, and the injury occurs in the course of the employment, the injury is accidental within the meaning of the act. *Fittro* v. *Industrial Com.* 377 Ill. 532; *Baggot Co.* v. *Industrial Com.* 290 id. 530.

Defendant in error testified that she was engaged in packing displays in cartons. Each package or display weighed about one and one-fourth ounces. They were packed forty to a carton. The cartons were approximately eight by sixteen inches. She handled about 600 cartons per day. The supply of displays was kept on a bench behind the worker; the cartons were packed on a table in front of the operator. In doing her work she would turn and reach back to the supply of displays on the bench behind her, pick up three displays at a time in her hand and bring the same around and place them in the cartons on the table in front. This movement of her body and arm was repeated in every operation. On the day in question, while working as above indicated, she felt a pain in her left wrist. As she expressed it, "something seemed to snap in my arm while I was turning my arm to one side." There is nothing in the record tending to dispute this statement. She immediately told her forelady, who was her immediate superior, what had happened. This incident occurred on February 22, however, and she kept on working, but her arm continued to bother her in doing her work.

On February 27, 1940, the forelady sent her to Dr. Przypyszny, a physician selected by plaintiff in error, or its forelady. She was given heat treatments to the arm and the arm was bandaged by him; she then worked until

March 17, 1940, when she remained at home two weeks on account of a burn sustained, at her home, to the other hand. She then returned to her work and continued for about three weeks, during which time, she testified her arm got worse. On April 24, her arm was placed in a cast. Plaintiff in error also sent defendant in error to Dr. Stevens, who also gave her heat treatments applied to her arm. Dr. Stevens testified she was under the care of his office for about seven weeks. Dr. Przypyszny, to whom plaintiff in error first sent defendant in error for treatment and who saw her and examined her arm a few days after the alleged accident, was not called as a witness and did not testify. Dr. Stevens testified that he first saw defendant in error and treated her on March 31, 1941.

Dr. Deadman testified that he examined the injured arm on July 10, 1940. Outside of possibly a little puffiness over the lower end of the left ulna on the palmar surface, he found practically no objective symptoms at that time. He expressed the opinion that there was a causal connection between the work the defendant in error was doing and the condition of her arm at the time he examined her. He expressed the opinion that she had developed "an occupational neurosis which is similar to a writer's cramp." Further, that it was "an occupational disturbance with undoubtedly some inflammatory condition of the tendon sheath. The sheath of the tendon that is brought into play when this particular movement is done." It is upon this answer of Dr. Deadman that plaintiff in error bases its contention that defendant in error was suffering from a neurotic condition rather than a physical disability. From this basis it is argued that the Workmen's Compensation act does not cover disability resulting from neurosis, and that the disability of the plaintiff in error is not compensable under the act.

Whether this doctor used the terms "occupational neurosis" in the sense of a functional nervous disorder without demonstrable physical lesion, or whether he used those

terms in the sense of a nervous condition produced by physical lesion, is not clear from the record. But, unless her own testimony is to be entirely disregarded, it must be said that she did sustain a physical lesion of some kind at the time and place testified by her.

Giving due consideration and weight to all of the evidence in the record, we cannot say that the decision of the Industrial Commission was manifestly against the weight of the evidence. There is evidence in the record fairly tending to support the decision of the Industrial Commission. Under the testimony of the defendant in error, she received an accidental injury which was traceable to a definite time, place and cause in the course of her employment. It was directly connected with the manner and method in which she was required to do her work, and to use her arm in the discharge of her duties. The injury arose out of, and in the course of, her employment, within the meaning of the Workmen's Compensation act. We are not impressed with the argument that her only ill-being was an occupational disease not comprehended within the provisions of the compensation act. It seems rather strange that, if this woman did not receive a physical injury to her arm, the two physicians selected by plaintiff in error, one of whom did not testify, should treat her over a period of several weeks, during which time they gave her heat treatments and other treatments commonly used as treatments for physical injuries. They finally placed her arm in a cast, where it remained for some time. We do not think it would be contended that physicians would apply heat treatment or place an arm in a cast for a neurotic condition if there was no evidence of a physical lesion.

Plaintiff in error also contends that there was no competent evidence in the record to sustain the finding of the commission as to the extent of the injury and the permanency of its character.

Where an award is justified by a personal examination of the injury and by other evidence, it is not within the jurisdiction of this court to set aside the conclusions of the Industrial Commission as to the extent of the injury and the amount of the award. (*Heed* v. *Industrial Com.* 287 Ill. 505.) The finding of the Industrial Commission as to the extent of the disability arising from the injury, being a legitimate conclusion from the facts proven by competent evidence, is conclusive on this court. *Scully* v. *Industrial Com.* 284 Ill. 567.

We are satisfied from the evidence in the record that the judgment of the circuit court of Cook county confirming the award of the Industrial Commission was right and that judgment is affirmed.

*Judgment affirmed.*