(No. 32421.—
QUAKER OATS COMPANY, Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(ROBERT W. HUSTON, Plaintiff in Error.)

*Opinion filed March 23, 1953.*

JEROME J. DOWNEY, and ROBERT C. BOURLAND, JR., both of Rockford, for plaintiff in error.

JOHN H. PAGE, of Rockford, for defendant in error.

Mr. JUSTICE DAILY delivered the opinion of the court:

Robert W. Huston, plaintiff in error, filed his application for adjustment of claim with the Industrial Commission, charging that he was entitled to workmen's compensation benefits from his employer, Quaker Oats Company, for the loss of his left leg. After hearing, the arbitrator awarded plaintiff in error 55 weeks temporary total disability, 190 weeks for loss of the use of his left leg by reason of amputation, $1470.10 for necessary medical and hospital expense, and directed defendant in error to furnish him with an artificial leg. On review, the Industrial Commission sustained the award of the arbitrator. However, its decision was reversed by the circuit court of Winnebago County, after hearing on writ of *certiorari*. The cause is here for further review on writ of error granted by this court.

The record discloses that Huston was first employed by defendant in error in June, 1946, at which time he was 28 years old and apparently in good health. His duties were to operate a boxing machine that filled cardboard cartons with 48 one-pound cans of dog food. The operation of the machine required him to stand for eight to ten hours a day in such a manner that his weight rested on the ball of his left foot. About four months after he started to work, Huston complained of aching feet and legs and consulted the plant nurse, who suggested that he treat himself with hot foot baths. The nurse testified that his calls

and complaints continued during the whole period of his employment, averaging about four a month.

On occasion, beginning in July, 1949, and more particularly on August 4 and 5 of that year, the boxing machine went out of adjustment from time to time in such a manner that cans would drop to the floor, and in so doing some would fall on Huston's left foot. He testified that the falling cans hurt him, although they caused no visible cut or bruise, and that, in some instances, he stopped work, took off his shoe and rubbed his foot until the pain eased. Subsequent to August 5, the machine would malfunction once or twice a week, and very often cans would drop on claimant's foot. Huston complained to the foreman about the faulty operation of the machine and about the cans striking his foot but was told nothing could be done about it at the time because of their six-days-a-week work schedule. In the early part of September, an attempt was made to fix the machine but the faulty operation continued thereafter and cans were still dropped on Huston's foot, the last such occasion being on December 28, 1949.

During one of Huston's calls to the nurse in September, 1949, she sent him to the company doctor who examined his legs and feet, advised him that he had no compensable condition and to see his own doctor. Neither the nurse nor the doctor were told about the recurring incidents of the falling cans. Huston had, in fact, been seeing his family doctor about his legs and feet since April, 1949, and in the latter part of the year was being treated for a fungus infection on his left little toe which became ulcerated early in December. His complaint was such, at the time, that he consulted several doctors during that month, one of whom finally diagnosed his malady as Buerger's disease. A specialist was consulted early in January, 1950, and he recommended immediate hospitalization. In the hospital efforts were made to restore circulation to the lower left leg but they proved unsuccessful and the leg was amputated three

to six inches below the knee. When.the leg failed to heal, a second amputation was performed just below the knee. It, too, was unsuccessful and was followed by a third amputation, just above the knee, which healed properly. Medical examination at the time of the last amputation disclosed that the popliteal artery was completely occluded at about knee level, thus shutting off the blood supply to the lower parts of the extremity. Following Huston's hospitalization a dispute arose as to his employer's liability under the Workmen's Compensation Act and has culminated in this action.

Both parties concede that Huston was afflicted with Buerger's disease prior to, and during the time the cans fell on his foot, and that the falling cans did not cause the disease. However, it is Huston's contention that the injuries suffered to his foot from the blows of the falling cans, aggravated and accelerated the pre-existing condition. In this respect both parties also recognize that aggravation or acceleration of a pre-existing disease is an injury which is compensable under the statute, if caused by some accident occurring in the course of employment. (*Corn Products Refining Co.* v. *Industrial Com.* 402 Ill. 250; *Fittro* v. *Industrial Com.* 377 Ill. 532; *Powers Storage Co.* v. *Industrial Com.* 340 Ill. 498; *Peoria Terminal Co.* v. *Industrial Board,* 279 Ill. 352.) It is the rule of these cases that where there is a pre-existing disease, the evidence must show an aggravation or acceleration of the disease by some accidental injury arising out of and in the course of the claimant's employment. In this case, defendant in error first contends that the claimant-plaintiff in error has failed to prove, by a preponderance of the evidence, (1) that he sustained an accidental injury in the course of his employment, or (2) the causative relation between the alleged injury and the aggravation and acceleration of the pre-existing disease.

In reversing the decision of the Industrial Commission, the circuit court reached the conclusion that the evidence showed neither an accident nor an injury to the claimant. In saying that no accident occurred, the court, in a memorandum decision, rationalizes as follows: "After the first few times that the machine broke and the cans fell on the foot of the Petitioner, it cannot be said that further breakdowns and dropping of cans from the machine on the foot of the Petitioner, was accidental. It cannot be said that such an incident was unforeseen. Rather, it seems it could readily be foreseen that the continued operation of the machine without its being adequately and properly repaired, would lead to just the situation that Petitioner complains of, that the result of the operation of the machine and the throwing of cans on the foot of the Petitioner could be foreseen and, therefore, was not accidental." We do not agree with such a conclusion. In *Fittro* v. *Industrial Com.* 377 Ill. 532, and in *Matthiessen & Hegeler Zinc Co.* v. *Industrial Board,* 284 Ill. 378, this court stated that an injury is accidental, within the meaning of the Workmen's Compensation Act, which occurs in the course of employment unexpectedly and without the affirmative act or design of the employee. It is something which is unexpected and unforeseen by the person to whom it happens. There is no evidence or claim here that the machine operated improperly as the result of any affirmative act or design of the claimant and, considering the nature of the machine being operated, we believe that the fitful breakdowns must be said to have been unexpected. The evidence shows that the machine was a fully mechanical device which the claimant operated by levers. The malfunctionings which occurred were at irregular intervals and came without warning, and most of the time the machine functioned normally. There was no way of foreseeing the exact moment when the machine would malfunction, thus we believe that the break-

downs must be held to have been accidental within the meaning of the statute. To adopt the view of the circuit court and to hold that the injury to the claimant was a foreseen result, and thus not accidental, is tantamount to charging the employer with an intentional injury of the claimant, as well as to indirectly suggest that the claimant allowed an injury to be inflicted upon himself. Such a result also injects a doctrine of foreseeability into the Workmen's Compensation Act, to an extent that finds no basis in the policies of the act or in the decisions of this court construing it.

Even if the conclusion of the circuit court were to be accepted as true, we believe it is overcome by the facts of the case. The evidence shows that a mechanic supposedly repaired and adjusted the machine, about two months after its irregular operation had started. When a defect in a mechanical device is considered to have been repaired, the fact that the defect reappears cannot be said to have been expected or foreseen. Another breakdown is a possibility, of course but, again, the exact moment of the recurrence cannot be foreseen and comes unexpectedly. Further, we think the circuit court in error when it broadly stated that the result the claimant now complains of could be foreseen. Such reasoning ignores that claimant was suffering from Buerger's disease when the incidents in his employment occurred, which fact, through no fault of his own, was unknown to the claimant. It cannot be said that aggravation or acceleration of the disease could be foreseen, when its very presence was unknown to anybody. From our consideration of the facts in the record, it is our judgment that the falling of the cans on claimant's foot was accidental, within the meaning contemplated by the Workmen's Compensation Act.

Next to be determined are the interrelated issues of whether the claimant suffered an injury and whether there was a causal connection between the injury and the aggra-

vation and acceleration of Buerger's disease in the claimant. It was the opinion of the circuit court that the medical testimony was that injury might or could cause an aggravation of the disease, however the court felt that there was no evidence of an injury here, but only an assumption of one, and, on this basis, denied the claim for compensation.

Buerger's disease is defined as an obscure disease of the arteries and veins, being an inflammatory and morbid process. Inflammation takes place on the walls of those vessels, most often in the feet and legs, coincident with which extensive clotting appears, followed by a process of scar tissue replacement so that affected arteries and veins are converted into hard fibrous parts, closing off the circulation of the members affected, followed by secondary and visible effects, lesions, deteriorating changes and gangrene. The origin of the disease is not known and there is no known cure, the usual treatment being amputation of the affected part. (Words and Phrases, Vol. 5, Perm. Ed. p. 863; *Calmar S.S. Corporation* v. *Taylor,* 92 Fed. 2d 84.) The foregoing definition substantially reflects the medical testimony which was given in this cause. Defendant in error contends that there was no evidence of injury because claimant's foot was never bruised, lacerated or marked in any way that caused him to report an injury or to seek treatment for it. Everyday-experience alone is sufficient to tell us that an injury to the human body, even though caused by an external blow, is not always visible to the eye. While claimant's foot was unmarked, we have his uncontradicted testimony that he suffered pain when struck by the cans, which was so great in some instances that it caused him to stop work. Although the medical witnesses acknowledge that little is known of the cause of Buerger's disease, they expressed the opinion, based on existing medical knowledge, that factors which might increase the speed of the disease were trauma, extremes of cold, use of tobacco and various types of infectious processes such as typhoid

fever. One expert testified that the intermittent dropping of one-pound cans on the foot of one suffering from Buerger's disease constituted trauma which might both directly and indirectly aggravate or cause an acceleration of the disease. Directly, because the blows could cause a spasm of the affected artery which would be transmitted to the site of the inflammation and which would hasten the complete occlusion of the artery, and, indirectly, because the blows might cause damage to tissue in the foot which would not heal properly in a foot having abnormal blood circulation and which could lead to gangrene. In response to a hypothetical question, a medical expert testifying for the claimant expressed an opinion that the blows caused by the dropping of one-pound cans on the foot of a person suffering from Buerger's disease could have a causal relationship to the acceleration of the disease to the point of amputation. An expert testifying for defendant in, error expressed a contrary opinion based on the assumed facts; however, his testimony indicates that he was of the opinion that an injury to the tissues could, in some circumstances, aggravate the disease and affect its speed.

Considering the record as a whole, we cannot agree that the evidence shows neither injury nor causal connection with the aggravation and acceleration of the claimant's pre-existing condition. The sole question before us is whether the findings of the Industrial Commission are supported by substantial evidence. There is medical testimony here that repeated blows on the foot of a person suffering from Buerger's disease constitute trauma, and we have claimant's testimony of suffering sharp pain which normally accompanies an injury. In addition we have all the objective symptoms of a case of Buerger's disease accelerated and aggravated to the climactic point of amputation. Notwithstanding that there is no visible evidence of trauma, this court has held that where a diagnosis of injury is founded in part upon objective symptoms, other

medical testimony as to the objective symptoms being conflicting, it cannot be held that there is no proof of the injury of which there are objective symptoms. (*Olin Industries, Inc. v. Industrial Com.* 394 Ill. 202; *Powers Storage Co. v. Industrial Com.* 340 Ill. 498.) The evidence here as to whether repeated blows on the foot of one suffering from Buerger's disease constitutes injury is conflicting, and, after analyzing it, we cannot say that the finding of the Industrial Commission is against the manifest weight of that evidence. It is not the province of this court to undertake to determine where the preponderance of evidence lies, or which medical experts are more worthy of belief, and we will not substitute our judgment for that of the commission unless we can say that its finding is clearly and manifestly against the weight of the evidence. *Boutwell v. Industrial Com.* 408 Ill. 11; *Moergen v. Industrial Com.* 394 Ill. 383; *Copas v. Industrial Com.* 349 Ill. 262.

While it is true that the opinions expressed by the medical experts, with regard to the aggravation of the claimant's condition as a result of his accidental injury, were cautious and were not expressed with unhesitating conviction, it is to be remembered that the disease in question is one on which medical knowledge is limited and that the medical issue presented in the case is one which could hardly permit an unqualified and unequivocal answer. It is paramount, however, that the opinions expressed represent the medical views which have been developed from past experience with the disease and that the opinions are not based solely upon unreasonable conjecture. Under these circumstances, we are unable to say that there is no evidence which supports the finding of the commission that the progress of the disease was accelerated by accidental injury and that the claimant's disability, therefore resulted from the accident.

In light of medical testimony that smoking is believed to cause an aggravation and acceleration of Buerger's dis-

ease, defendant in error contends that the progression of the disease in the claimant to a point that amputation was necessary was not due to accidental injury, but to the claimant's failure to stop smoking as advised by his doctors. The evidence shows that claimant reduced his smoking to about one cigarette a day when first advised not to smoke and that he stopped completely when he entered the hospital. The doctors who attended him were of the opinion that the smoking habit reduced to this extent, after warning, would not accelerate the progress of the disease. The expert who testified for the defendant in error testified that smoking even to the limited extent shown by the record, might or could cause an acceleration of the disease to a point of amputation. Here, again, the evidence is conflicting and we cannot say that the decision reached by the commission is against the manifest weight of that evidence.

The next contention made by defendant in error is that claimant failed to give proper notice of the accident as provided in section 24 of the Workmen's Compensation Act. (Ill. Rev. Stat. 1949, chap. 48, par. 161.) This section of the act requires an employee to give notice to his employer, orally or in writing, within thirty days after the accident and further provides that no defect or inaccuracy of the notice should be a bar to the maintenance of proceedings by the employee, unless the employer proves that he is unduly prejudiced in the proceeding as a result of the defect or inaccuracy. In construing this section, we have held that liberality in the matter of notice should be allowed to the extent that it is consistent with the protection of the employer against unjust concealment of claims. (*Raymond* v. *Industrial Com.* 354 Ill. 586; *Armour & Co.* v. *Industrial Com.* 367 Ill. 471.) Further construing the statute, we held in *Consumers Co.* v. *Industrial Com.* 364 Ill. 145, that it was the intention of the legislature to require an employee or his dependent to place the employer in possession of all known facts within thirty days after

the accident, "if known," and, if not known, within a reasonable time after their ascertainment. The facts of this case show that the claimant complained to his foreman on several occasions about the cans dropping on his foot shortly after the occurrence and that the foreman acknowledged the complaint by seeking to have the machine repaired. Under the circumstances, this is the only notice that could be given at the time. Claimant was not then aware that he suffered from a disease, and it was not until later, acting reasonably in search of the cause of the disability, he learned that he sustained an injury which probably arose out of and in the course of his employment. When such knowledge was acquired, the record shows without contradiction that it was conveyed both to the claimant's foreman and to a plant official. The complaints to the foreman about the falling cans may have been defective and inaccurate as a notice, but the facts were as apparent to the employer as to the employee; there was no attempt at a concealment of claim nor was the employer in any way prejudiced by the defect or inaccuracy, for it was well acquainted with all the facts and circumstances of the accident. (*Chicago Rawhide Mfg. Co.* v. *Industrial Com.* 291 Ill. 616; *Valier Coal Co.* v. *Industrial Com.* 320 Ill. 69; *Savin* v. *Industrial Com.* 342 Ill. 41.) Under the circumstances shown by this record, we believe that the weight of the evidence sustains the decision of the commission that notice of the accident was given in a manner and within the time contemplated by the statute.

In conclusion, defendant in error complains that it should not be made to bear the expense of the medical, hospital and surgical bills incurred by the claimant. It is contended that defendant in error had no knowledge that such services were necessary and, also, that such services were never requested by the claimant. The Workmen's Compensation Act imposes a mandatory duty on the employer to furnish first aid and all reasonably necessary

medical, surgical and hospital expenses thereafter required, and yet permits the employee to elect to procure his own physician and hospital services at his own expense. (Ill. Rev. Stat. 1949, chap. 48, par. 145(a).) In the absence of an employee's request for medical assistance, the employer is without liability in this regard, unless it can be shown that the employer was in possession of facts from which he might reasonably be presumed to know or believe that such services were necessary. (*Raymond* v. *Industrial Com.* 354 Ill. 586; *Chicago-Sandoval Coal Co.* v. *Industrial Com.* 294 Ill. 351.) In the *Raymond case,* under a comparable factual situation to the one here presented, this court, in dismissing the point now raised, said: "Plaintiff in error quotes from our opinion in *Chicago-Sandoval Coal Co.* v. *Industrial Com. 294* Ill. *351,* as follows: 'The applicant should show knowledge on the part of the employer of facts from which he might reasonably be presumed to know or believe that such services were necessary, or the applicant should show a request therefor on his part.' We approve of, and adhere to, the rule which we announced in the above case but cannot arrive at the same deductions from it in the present case as are suggested by plaintiff in error. In the first place, as pointed out above, the employer knew as much about the nature of the employee's illness as the latter himself knew. All the facts were known equally by both parties, and it is difficult to perceive any just theory upon which the employee would be bound to draw the correct medical inferences from those facts and the employer be excused therefrom. Medical services are as much a part of the compensation provided by law as is the weekly payment of money, and we would not care to adopt a rule which would require an employee unskilled in medicine to make a correct diagnosis of his illness on peril of losing a large portion of that which is justly due him. We must give some meaning and weight to the word 'elect,' which means to choose, and until the employee has

had the opportunity to choose, either to accept the services provided by his employer or to furnish his own, there has been no election." It is our opinion that the facts of the present case command a like result, *i.e.,* that the claimant made no election and that defendant in error may reasonably be presumed to have known that medical and surgical services were necessary. Such a conclusion is fortified by the evidence which shows that claimant's mother notified defendant in error of his entry to the hospital and by the fact that claimant's foreman visited him at the hospital and arranged for blood transfusions among fellow employees, before any surgery was performed.

The judgment of the circuit court of Winnebago County is reversed and the award of the Industrial Commission is confirmed.

*Judgment reversed; award confirmed.*