(No. 44475.–

INTERNATIONAL HARVESTER COMPANY, Appellant,
v. THE INDUSTRIAL COMMISSION *et al.,*—(Russell
D. Dinwiddie, Appellee.)

*Opinion filed October 1, 1973.—Rehearing denied Nov. 28, 1973.*

Bozeman, Neighbour, Patton & Noe, of Moline (Hubbard B. Neighbour, of counsel), for appellant.

Gordon E. Winders, of Rock Island, for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

International Harvester Company (Harvester) has appealed from an order of the circuit court of Rock Island County which affirmed the decision of the Industrial Commission awarding compensation to Russell Dinwiddie.

Dinwiddie's claim was originally brought against his employer, Harvester, under the Workmen's Occupational Diseases Act (Ill. Rev. Stat. 1959, ch. 48, par. 172.36 *et seq.*), but on review by the Industrial Commission of an arbitrator's award, he filed an amended application for adjustment of claim under the Workmen's Compensation Act (Ill. Rev. Stat. 1959, ch. 48, par. 138.1 *et seq.*), alleging that on October 2, 1959, he was injured by reason of an accident arising out of and in the course of his employment. The Commission subsequently found that the employee sustained an accidental injury arising out of and in the course of his employment which rendered him wholly incapable of work, and awarded him compensation for permanent total disability under the Workmen's Compensation Act. Ill. Rev. Stat. 1959, ch. 48, par. 138.8(f).

Dinwiddie is disabled because of pulmonary emphysema. On the date of the alleged injury he was 39 years old and had been employed by Harvester for six years. In his youth he had been active as an amateur boxer. Although

he had bronchitis when he was sixteen, he subsequently encountered no difficulty in breathing, and while serving in military service, participated in football, baseball and boxing without experiencing any respiratory problem. After his discharge from the army, he engaged in farming, worked in a poultry house and did dairy and oil field work. Later he became a welder, and went to work as an arc welder for Harvester in 1953, where he remained until ceasing work due to his disability. During his employment by Harvester, his only illness was a five-day hospitalization when he had influenza.

Dinwiddie testified that as an arc welder he worked in a canvass-covered booth which was neither enclosed at the top nor bottom, and was ventilated by means of small oscillating floor fans; that the welders wore hoods, but no mask or respirator-type device designed to filter air intake; that the process of welding caused a heavy smoke to rise and hang in the air; and that the colored glass on the helmet he wore had to be changed two or three times a day because of the smoke and dust.

He further testified that he had no breathing difficulty when he began working for Harvester in 1953; that he first noticed it in 1958 while squirrel hunting when he ran out of wind while walking fast up a hill; and that after he returned from his vacation that year when he would climb a flight of stairs rapidly his heart would pound and he would have difficulty breathing. He stated that he received no medical care in 1958; that he did not have too much difficulty with breathing during the first half of 1959, but later noticed it on over-exertion; and that while on his vacation in 1959, his legs gave out and he had to be helped and waited on. He related that when he returned to work after his vacation he experienced dizziness, difficulty when climbing stairs, and weakness in his legs.

He stated that two or three weeks prior to October 2, 1959, there were days when he received a pass from first aid to go home because it was difficult for him to breathe;

that he may have worked a full day on October 2, but on October 3 he failed to return to work because he was very sick. He said that at that time he was "wheezing and rattling" as though he had pneumonia; and that he was then under the care of Dr. Louis Arp, and was hospitalized for a week beginning October 10, 1959, and again for two weeks beginning November 29, 1959.

While under the doctor's care, he stated that he continued to have difficulty in breathing and could not be near smoke even in his own kitchen; that he returned to work only for a week after each of the first two periods of hospitalization; that he was released from the hospital a third time on January 5, 1960, and worked a month. After October, he operated an overhead crane, but he still had difficulty in breathing.

He also testified that he had worked only six or seven days since February 5, 1960, driving tractors for farmers; that when he did so, he would have chills, his chest would hurt, and "his wind would shut off." He does no more walking than he has to because when he walks a normal gait his wind shuts off and his legs get weak. On cross-examination, he said he had reduced his cigarette smoking from half a pack in 12 hours in 1959, to 3 cigarettes a day in 1964.

Dr. Eric M. Peterson, a specialist in cardio-pulmonary diseases, who testified for Dinwiddie, examined him on July 16, 1962, and on August 7, 1962. His diagnosis was that Dinwiddie "had a considerable degree of pulmonary emphysema and a secondary fibrosis." He described him as a "respiratory cripple," declared that "his prognosis is bleak," and stated that he knew of no effective therapy for the disease. In response to a hypothetical question, Dr. Peterson said that Dinwiddie's condition was related to his occupation, and that, although the petitioner would have had emphysema regardless of his employment, his condition was aggravated by exposure to the noxious agents involved in welding. The doctor stated further that though

the cause of emphysema is unknown, the disease progresses at a more rapid rate for people exposed to respiratory irritants or air pollutants than for individuals not so exposed. On cross-examination he said that, in his experience, emphysema tends to have its onset in "the middle span of life."

The record shows and this court has previously recognized that emphysema is a general disease of life. As such, it is not compensable under the Workmen's Occupational Diseases Act. (*Rockford Transit Corp. v. Industrial Com., 38 Ill.2d 111; Lewis v. Industrial Com., 38 Ill.2d 461.*) Therefore, if Dinwiddie is to receive compensation for his disability the right to recover must be found in the Workmen's Compensation Act and not in the Workmen's Occupational Diseases Act. Whether the condition of an employee who suffers from emphysema was aggravated or caused by the conditions under which he worked so that his disability is compensable under the Workmen's Compensation Act is a question of first impression in this court.

The Workmen's Compensation Act is entitled "An Act to promote the general welfare of the people of this State by providing compensation for *accidental injuries* or death suffered in the course of employment ***." (Emphasis added.) The controlling question before this court then is whether Dinwiddie suffered an accidental injury in the course of his employment within the meaning of that term as used in the Act. It is the employee's position that each inhalation of the irritating fumes which assaulted his lungs over the 6-year period during which he worked for Harvester as a welder constituted an accidental injury which aggravated his pulmonary emphysema culminating in his disability on October 2, 1959.

This court has held that the word "accident" is not a technical legal term but encompasses anything that happens without design or an event which is unforeseen by the person to whom it happens. (*Baggot Co. v. Industrial*

*Com., 290 Ill. 530, 533.*) In *Matthiessen & Hegeler Zinc Co. v. Industrial Board, 284 Ill. 378, 384,* this court stated that an injury is accidental within the meaning of the Act when it is traceable to a definite time, place and cause and occurs in the course of employment unexpectedly and without affirmative act or design of the employee. This definition has been consistently adhered to by this court. *Baggot Co. v. Industrial Com.; Peru Plow and Wheel Co. v. Industrial Com., 311 Ill. 216, 220; Labanoski v. Hoyt Metal Co., 292 Ill. 218; Fittro v. Industrial Com., 377 Ill. 532; Perkins Products Co. v. Industrial Com., 379 Ill. 115; Canadian Radium & Uranium Corp. v. Indemnity Insurance Co. of North America, 411 Ill. 325, 330; Laclede Steel Co. v. Industrial Com., 6 Ill.2d 296, 300; Hales & Hunter Co. v. Industrial Com., 31 Ill.2d 139.*

A disease may be an accidental injury and compensable under the Workmen's Compensation Act if it is contracted accidentally or as a result of an accident. (*Rissman & Son v. Industrial Com., 323 Ill. 459; Permanent Construction Co. v. Industrial Com., 380 Ill. 47.*) However, the same definition of "accident" is applicable as in the traditional accidental injury case, and the requirement that the occurrence must be traceable to a definite time, place and cause applies. *Chicago Rawhide Mfg. Co. v. Industrial Com., 291 Ill. 616.*

Likewise, the aggravation of a pre-existing disease may be an accidental injury and compensable under the Workmen's Compensation Act. (*Quaker Oats Co. v. Industrial Com., 414 Ill. 326; Fisher Body Div., General Motors Corp. v. Industrial Com., 20 Ill.2d 538; Allis-Chalmers Mfg. Co. v. Industrial Com., 23 Ill.2d 497.*) Again, the same requirement that the occurrence be traceable to a definite time, place and cause applies. *Fittro v. Industrial Com., 377 Ill. 532, 538.*

In speaking of an accidental injury there is a tendency to focus on the cause as constituting the accident rather than the result. As an example, Dinwiddie here contends

that each inhalation of the irritating fumes constituted an injury focusing upon the cause rather than the disability. This court has held that there need not be anything unusual about the employment out of which the disability arose. (*Matthiessen & Hegeler Zinc Co. v. Industrial Board, 284 Ill. 378, 384; Baggot v. Industrial Com., 290 Ill. 530, 534.*) Also there need be no external violence to the body to constitute an accidental injury. Compensation may be allowed where the employee's existing physical structure, whatever it may be, gives way under the stress of his usual labor and he is suddenly disabled. This is true even though the result would not have obtained had he been in normal health. *Town of Cicero v. Industrial Com., 404 Ill. 487, 492; Laclede Steel Co. v. Industrial Com., 6 Ill.2d 296, 300; Clifford-Jacobs Forging Co. v. Industrial Com., 19 Ill.2d 236, 244.*

Whether we focus on the result or the cause as the accident involved in this case, the plaintiff here has not sustained the burden of proving that the aggravation of his pulmonary emphysema arose out of and in the course of his employment. He did not suffer from an accidental injury within the meaning of the Act. He suffered from a gradually debilitative disease. He was aware of the manifestation of this disease more than a year before the date on which he now claims he suffered an accidental injury. He suffered no sudden disablement from the aggravation, nor was there a sudden giving way of his body structure in the manner that that term has heretofore been used by this court. As to the cause, Dinwiddie can point to no definite time, place or cause of the aggravation except to say that it occurred over the six-year span of time during which he worked as a welder for Harvester.

To apply the repeated-trauma theory and hold that each inhalation of smoke while at work constituted an injury would be to adopt a fiction which would broaden the application of the Workmen's Compensation Act to cover areas not contemplated by the legislature.

It is contended that the rigid requirements of *Matthiessen & Hegeler Zinc Co.* and *Peru Plow and Wheel Co.* that an accidental injury within the meaning of the Workmen's Compensation Act must be traceable to a definite time, place and cause has been relaxed by our holding in later cases. A quick glance at the cases cited above in support of this principle reveals that this requirement has been applied consistently by this court including cases of recent date.

In support of this contention Dinwiddie cites *Arquin v. Industrial Com., 349 Ill. 220; Perkins Products Co. v. Industrial Com., 379 Ill. 115; City of Chicago v. Industrial Com., 389 Ill. 592; Permanent Construction Co. v. Industrial Com., 380 Ill. 47,* and *Quaker Oats Co. v. Industrial Com., 414 Ill. 326.* In *Arquin* an intern had been assigned to the contagious ward of the Cook County Hospital and contracted epidemic meningitis and died. He had been assigned to the ward for only six days prior to the time he contracted meningitis. Thus, both the cause (the exposure) and the result (contracting the disease) were traceable to definite times, places and causes.

In *Perkins Products Co.* the injury was produced by repetitive movements of the employee's arms, wrists and hands culminating in a disability on a fixed date when she stated: "something seemed to snap in my arm." In *City of Chicago* the claimant was a diabetic and was an investigator for the city. He stubbed his toe during the course of his employment—an accident which ultimately caused the amputation of his leg. Here, again, both the cause and the result were traceable to the fixed time, place and occurrence. In *Quaker Oats* the employee had Burger's disease. As a result of the malfunctioning of a machine which he operated at work, one-pound cans frequently fell on his foot over a six-month period. The claimant testified that each blow, although leaving no mark on his foot, caused him pain, in some cases so painful as to cause him to stop work. In that case, as the court pointed out, in addition to

the evidence of these repeated blows, there were the objective symptoms of the case of Burger's disease accelerated and aggravated to the climactic point of amputation, which is a sudden disability within the meaning of the term "accidental injury." In *Permanent Construction Co.* the employees contracted typhoid fever while working on the grounds of the State hospital and after having drunk contaminated water.

Similarly, in the heart cases, including those which involved a pre-existing heart condition, the claimant must prove an accidental injury and the requirement that it be traceable to a definite time, place and occurrence has not been abandoned. *Bethlehem Steel Co. v. Industrial Com.*, 6 *Ill.2d* 290; *Republic Steel Corp. v. Industrial Com.*, 26 *Ill.2d* 32; *Ford Motor Co. v. Industrial Com.*, 50 *Ill.2d* 267.

We have found no case in this State where recovery under the Workmen's Compensation Act has been allowed where a disease or an aggravation of a disease has developed over an extended period of time and the disability resulting therefrom likewise cannot be traceable to a definite time, place and cause. These situations do not constitute accidental injuries. Compensation in such cases, if it is to be allowed at all, should be allowed under the Workmen's Occupational Diseases Act.

In *Peru Plow and Wheel Co. v. Industrial Com.*, 311 *Ill. 216,* the claimant had worked five years during which time the air in the room where he worked was filled with fine metal dust. The constant breathing of the dust eventually caused a lung disorder. The court denied recovery under the Workmen's Compensation Act saying that the claimant had not suffered an accident but has sustained an occupational disease; it stated: "An occupational disease is a diseased condition arising gradually from the character of the work in which the employee is engaged. It does not occur suddenly but is a matter of slow development. An occupational disease is not an accident." 311 Ill. at 221.

The same distinction between an accidental injury and the gradually developing disease was maintained by this court in *Hales and Hunter Co. v. Industrial Com., 31 Ill.2d 139.* There the claimant had contracted a lung disease from his employment. This court denied recovery because the claimant failed to prove the definite-time-place-and-cause requirement of an accidental injury.

In *Allis-Chalmers Mfg. Co. v. Industrial Com., 33 Ill.2d 268,* at 272, this court said: "Since benefits under workmen's compensation laws were for the most part restricted to accidental injuries or death, many injustices arose where there was no accident and, instead, injury, disease or death were occasioned by slow, gradual, and insidious processes arising out of and in the course of employment. (See, *e.g., Peru Plow and Wheel Co. v. Industrial Com., 311 Ill. 216.*) Occupational disease laws were designed to correct these injustices and to stand side by side with workmen's compensation laws as humane and remedial statutes to place upon an employer the responsibility for disease and injury directly attributable to the employment."

For a history of the development of the Workmen's Occupational Diseases Act in this State, see *First National Bank of Ottawa v. Wedron Silica Co., 351 Ill. 560.*

In *Rockford Transit Corp. v. Industrial Com., 38 Ill.2d 111,* this court denied recovery under the Workmen's Occupational Diseases Act for the aggravation of emphysema because this was an ordinary disease of life. Under the statute (Ill. Rev. Stat. 1965, ch. 48, par. 172.36(d)) recovery could not be had for the aggravation of a pre-existing disease unless the aggravation followed as an incident of an occupational disease as defined in the statute.

The net result of our conclusion in this case coupled with the decision in *Rockford Transit Corp.* is to deny recovery under either act for certain disabilities arising from aggravations of pre-existing ordinary diseases of life. This court recognized this limitation in *Rockford Transit*

*Corp.* and stated: "If it is desirable that compensation be made under circumstances such as those in the present case, the legislature can readily make the appropriate amendments." (38 Ill.2d at 114.) The legislature has not acted.

The wisdom or lack of it in failing to provide for recovery in situations such as we are now considering does not concern this court. (*First National Bank of Ottawa v. Wedron Silica Co., 351 Ill. 560, 567.*) The fact that the claimant cannot recover under the Workmen's Occupational Diseases Act "does not justify an award of compensation under the Workmen's Compensation Act for a disability that is not traceable to a definite time, place and cause." *Hales & Hunter Co. v. Industrial Com., 31 Ill.2d at 142.*

If we were to adopt the claimant's position and allow recovery under the circumstances presented in this case, our decision would destroy or seriously limit the usefulness of the Workmen's Occupational Diseases Act. The latter was adopted, as stated in *Allis-Chalmers Mfg. Co.,* for the particular purposes of supplementing the Workmen's Compensation Act. If we were to adopt the fiction urged in this case, the distinction between the two acts would be obliterated and a claim for practically any disease, occupational or pre-existing, could be brought under the Workmen's Compensation Act.

We must conclude that the claimant, Russell Dinwiddie, has failed to prove that he suffered an accidental injury arising out of and in the course of his employment and is therefore not entitled to recover under the Workmen's Compensation Act.

We have at this term of court decided *Leason v. Industrial Com., 55 Ill.2d 486,* wherein we have remanded the cause to the Industrial Commission with directions to enter an award for permanent and total disability. The employee in that case claimed that his disability resulted from an aggravation of pulmonary

emphysema. In that case, however, unlike the present case, the aggravation was traceable to a definite time, place and cause and thus was an accidental injury within the meaning of the Act.

Accordingly, the judgment of the circuit court of Rock Island County confirming the award of the Industrial Commission is reversed.

*Judgment reversed.*