(No. 81-CC-0052–

Tameaka Wells, Daughter of Cheryle Denise Ramsey, by Cleather Brown, Grandmother and Next Friend of Tameaka Wells, Claimant, *v.* The State of Illinois, Respondent.

*Opinion filed November 7, 1985.*

*Order on denial of rehearing filed March 3, 1986.*

Charles Stegmeyer, for Claimant.

Neil F. Hartigan, Attorney General (Sue Mueller, Assistant Attorney General, of counsel), for Respondent.

HOLDERMAN, J.

This is a wrongful death claim brought on behalf of the Claimant, Tameaka Wells, by her grandmother for the death of her natural mother, Cheryle Ramsey. Cheryle Ramsey, age 16 years, was sent by the Illinois Job Service in East St. Louis to a location at which she was to be employed as a baby-sitter. The incident occurred on May 16, 1979. When she arrived at the place where she was to be employed as a baby-sitter, she was beaten and stabbed to death by one Sylvester Davis, who had previously called the Job Service to request a baby-sitter be referred to him. At the time the referral was made, the Job Service had internal regulations which provided that no person under 18 years should be referred as a baby-sitter, that a Job Service employee making the referral could require references of prospective employers if it was felt to be necessary, and that utmost caution should be exercised in referring baby-sitters to private homes. The Job Service employee who referred the decedent ignored all three of these internal regulations.

This claim is based on the alleged negligence of Respondent. Claimant seeks relief based on the theory that Respondent was negligent in operating its State Job Service by failing to set qualifications for people who sought baby-sitting services from the placement service; failing to interview applicants for baby-sitters to determine whether or not the applicants needed the services and had acceptable qualifications; failed to advise or instruct people working as baby-sitters as to whether they had sufficient education to handle situations that might arise in various homes where baby-sitting was done, and failing to determine that a person seeking baby-sitting services was a dangerous individual with a criminal record.

The decedent had been referred to a particular location by the Illinois Job Service for the purpose of conducting baby-sitting services. Prior to being referred to this job, decedent was not registered or interviewed in accordance with the rules of the agency. The applicant for baby-sitting services was not interviewed in person by the Job Service.

The counselor, who made the referral prior to the death of decedent, was reprimanded and suspended from her job for violation of the internal regulations of the Illinois Job Service in that she did not interview the prospective job applicant prior to sending her out on a job and that the applicant was younger than regulations permitted in being referred to a baby-sitting job.

The evidence shows that the decedent was the mother of a child, Tameaka Wells, who was 16 months old at the time of her mother's death. Decedent was not married and did contribute to the support of the child through various jobs, including jobs as a waitress and baby-sitter. Respondent points out that the policy of the

Job Service in checking out prospective employers is not mandatory but discretionary.

The evidence shows that there is no question but that decedent died from a criminal act committed by Sylvester Davis in murdering decedent. It is not alleged that any agent of Respondent knew or had reason to know that Davis, who falsely identified himself in seeking baby-sitting services, would injure or kill decedent.

This claim must be decided on the issue of whether or not the State owed any duty to the decedent to foresee the criminal conduct that took decedent's life. The following cases, the Court believes, set forth the law in the State of Illinois regarding the State's responsibility in this matter: *Boyd v. Racine Currency Exchange, Inc.* (1973), 56 Ill. 2d 84, 305 N.E.2d 529; *Ozment v. Lance* (1982), 107 Ill. App. 3d 348, 437 N.E.2d 930; *Burks v. Madyun* (1982), 105 Ill. App. 3d 917, 435 N.E.2d 185.

It is the general rule in the State of Illinois that a person has no duty to control criminal conduct in order to prevent harm to a third person unless there is a "special relationship" between the person charged with the duty and the victim. This rule is set out in the *Restatement of Torts* (2nd) in section 316. The "special relationships" which may impose such a duty on a person include: (1) carrier-passenger; (2) innkeeper-guest; (3) landowner-business invitee; and (4) a person having custody of a victim under the circumstances which deprive the victim of the normal opportunities for protection.

It appears from a review of the above-cited cases that none of the "special relationships" outlined in section 316 occurred in the present case. Even if a "special relationship" did occur, the Court must also

consider the question of whether the criminal conduct is reasonably foreseeable in order to charge the State with negligence. As stated by the Court in *Burks v. Madyun*, ". . . the imposition of a duty to guard against criminal attacks by third persons depends upon notice of the danger to the invitee in addition to the existence of a special relationship." 105 Ill. App. 3d 917, 921.

Aside from the duty set out in Section 316, one may also assume a duty to protect third persons from harm. (See *Restatement of Torts*, section 324(a).) That section has been cited in and approved by the Illinois Supreme Court in the case of *Cross v. Wells Fargo Alarm Service* (1980), 82 Ill. 2d 313, 412 N.E.2d 472. The *Cross* case held "a duty voluntarily assumed must be performed with due care or 'such competence and skill as one possesses'." Notwithstanding the fact that one may assume a duty, there still is the issue of whether or not the criminal acts in question are reasonably foreseeable, hence we are back to the same problem as arises under the "special relationships" analysis. That is, whether the facts in this case support the conclusion that the criminal act which led to the death of the decedent was reasonably foreseeable by the State. It is at this point that the evidence in the record collapses and fails to support any such conclusions. In fact, there is no evidence in the record of any prior criminal conduct that the State had knowledge of on the part of the defendant, nor is there any evidence that the State was aware or should have been aware that the neighborhood involved was one in which crimes of this nature were likely to be committed, nor is there any evidence of similar crimes having been committed upon persons previously referred by the Illinois Job Service.

In addition to the foregoing, the *Ozment* court tells us "foreseeability alone is not sufficient. Before imposing a duty on defendant, the likelihood of injury, the magnitude of the burden of guarding against it and the consequence of placing that burden on defendant must also be taken into account." In other words, it is difficult to foresee how the Job Service could ever guard against the type of attack which occurred in this case without personally inspecting all the applicants it is referring and personally inspecting all of the prospective employers to whom it refers. This would obviously put such a manpower burden upon the Job Service as to threaten to put it out of business. If that were to happen, the logical consequence would be that the purpose of the program would be totally frustrated.

Claimant, at the hearing before the commissioner, made a lot of the fact that the Job Service personnel violated their own regulations in the referral in this case. The State has cited the case of *Carev v. State* (1982), 35 Ill. Ct. Cl. 96 for the proposition that the failure to comply with regulations was not the proximate cause of the injury. The Court agrees with that conclusion in the sense that the failure to comply with their own regulations relates to the issue of foreseeability. In other words, the fact that the violation existed does not alter the fact that the criminal conduct which took place here was not foreseeable by the State in its position as a job referral agency. Therefore, the fact that the regulations were ignored is not a proximate cause of the injury sustained by Claimant in the death of decedent.

In view of the law set forth above, it is the Court's opinion this claim should be denied and no award granted.

## ORDER ON DENIAL OF REHEARING

HOLDERMAN, J.

This matter comes before the Court upon Claimant's motion for a rehearing or, in the alternative, for a new trial.

The Court filed an opinion in this case on November 7, 1985, in which it refused to allow compensation to Claimant.

Claimant Tameaka Wells is the daughter of decedent, Cheryle Denise Ramsey, who was murdered while in the employ of the Illinois Job Service when she was sent to a home in response to a call for a baby-sitter.

Ordinarily, motions for new trials are addressed to the sound discretion of the trial court. (*In re Marriage of Hopkins* (1982), 106 Ill. App. 3d 135, 435 N.E.2d 897.) Generally motions for a rehearing include reconsideration by the trial court for a "misapprehension" of law as found in *Fulwider v. Fulwider* (1972), 81 Ill. App. 3d 581, 290 N.E.2d 264. On other occasions, such motions purport to present "newly discovered" evidence for the court's consideration. (*Drury v. Catholic Home Bureau* (1966), 34 Ill. 2d 84, 213 N.E.2d 507.) Claimant in this case does not purport to present any new evidence. Rather, she argues that the evidence on the record supports her conclusions that the Court has misinterpreted the law as applies to the facts in this case. She concludes, on page 3 of her brief, that "Claimants also believe that the State has additional duties to the young and naive in protecting them when the State assumes the Job Service responsibility."

The effect of Claimant's argument is to ignore the cases referred to in the Court's opinion regarding

intervening criminal conduct. Her conclusion that the State has additional duties to persons of tender years has the effect of grafting a new "tender years" exception onto the "special relationships" referred to in section 316 of the *Restatement of Torts* which is cited by the Court in its opinion. It is apparent from her argument that the Court did not misapprehend the law, but rather Claimant wishes to change the law by placing a new duty on the State which did not exist prior to this time.

Claimant also addressed the issue of foreseeability in her motion by arguing that the record clearly establishes that the State should have foreseen the danger to decedent. This, however, constitutes rehash of the facts previously considered by the Court in its initial consideration of this case. Claimant now asks the Court to reach a different conclusion because she is dissatisfied with the initial opinion. There is no attempt to present any new factual data for the Court's consideration. Even if such new facts were purported to be presented, she would have the burden of convincing the Court that her new evidence was not discoverable prior to trial. *Drury v. Catholic Home Bureau* (1966), 34 Ill. 2d 84, 213 N.E.2d 507.

Claimant's alternative motion for a new trial likewise is addressed to the discretion of the Court. She presents no new facts which might convince the Court to initiate a new evidentiary proceeding in this case; rather, her motion constitutes a reargument of the facts and conclusions which were previously rejected by the Court in its original opinion.

Claimant's motion for a rehearing or, in the alternative, for a new trial is hereby denied.